# 13-889-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

LISA B. FRALEY, STEPHEN MARSALA, JR., JOSHUA ADAM MANDELBERGER, WAKANA KAMESATO SEBACHER, TAMMIE FOSSACECA, AHN ROMERO, MARC RYAN FILLARI, MONA AFLATOONI, PAUL THOMAS MORRONE, CHRISTOPHER JOHN HOWE COLLATO, MATTHEW JOHN JEFFERIES, RUSSELL JAMES MONSON, NEIL THOMAS PUNT, MARK M. ULRICH, PAUL JAMES DICARLO, MATTHEW WILLIAM WILPERS, JAE Y. CHUNG, ASHLEY ALBERS AUSTIN, EMILY DIANE TOWERS, RYAN FARRELL HOLMES, KIMBERLY DANIELLE BLAISE, VANESSA

*(caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PAGE PROOF BRIEF OF PLAINTIFFS-APPELLANTS KYLE PIPPINS, JAMIE SCHINDLER, AND EDWARD LAMBERT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

JUSTIN M. SWARTZ, ESQ.
RACHEL M. BIEN, ESQ.
DEIRDRE A. AARON, ESQ.
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
(212) 245-1000

*Attorneys for Plaintiffs-Appellants Kyle Pippins, Jamie Schindler, and Edward Lambert, individually and on behalf of all others similarly situated*

ANGELIN CASTANO, REGINA V. FARRELL, DANIEL HUEY, DONALD RICHARD
KARR, RICHARD N. TINELLI, PARISSA HANNAH DANESHMAND, JOHN EDWARD
GLOCKZEN, JR., CIARA MARINO, WILLIAM WAITS RAULERSON, MARILYN
LOUIS, MARIO FANI, MARK NIXDORF, MARY BENSON SMITH, MATTHEW MILLS,
MEGHAN E. O'MALLEY, MELISSA GERDUNG, MICHAEL WEICHHOLZ, MICHAEL
YOO, MITCHELL A. MELFI, MORGAN ANN FRAME, NICOLE M. ANDERSON,
NIMISH PATEL, OLGA MARTYNOV, OREALIS MARIE ALVARADO, PARAS H.
DAGLI, PETER PANAGOS, ROBERT LIU, SAMUEL ROBERT YOUNG, SCOTT
LORENCE PFISTER, SEVILLE NICOLE CHRISTMAS, STEVEN GAUL, SUE YEN
CHONG, SVETLANA CONDUR, TIFFANY CHUA CHAN, TYONE GUILLORY, JR.,
VALERIE TANG, WILLIAM DRZICH, WILLIAM BAXTER, YELENA GLANTS, YUK N.
LI, YULIA BARLAND, ADAM MINSKY, ALEX COOK, ALEXANDER L. DIAZ, ANNA
HUANG, ASHLEE S. VERNER, BENJAMIN D. HARMON, BRANDON BURKLEY,
CAITLIN A. TENNANT, CAROLYN ELIZABETH MAHAR HASSEL, DIANA
FAZYLOVA, DOMINICA BARBER, DOWLING BURKE STOUGH, ROBERT DUSTIN
CATHCART, ELISA LEE HUA WU, EDMUND A. WINDSOR, ERIC VAN
FREDRICKSEN, ERIN ELIZABETH HART, ERIN S. SAUNDERS, GARRETT DEE
CAZIER, GREGORY GOLDSAND, HOLLAND STIMAC, JACK YI-PING TANG, JAMES
DOUGLAS NELSON, JEFFREY G. PIKE, JENNIFER LAI, JENNIFER M. STEWART,
JENNIFER MILLS, JEREMY T. FOWLER, JESSICA P. PUCKETT, JIA YIN WU, JOHN
DENG, LAUREN ELIZABETH FRIENDS, LELA MUJAKOVIC, LINDSEY
MCLAUGHLIN, LISA GRUND, DANIEL ANDREWS, BRIAN EDWARD CAPSTICK,
HARRISON D. COLE, CHRISTOPHER BLAKE ELLIOT, DAEGA FATAH, CLIFFORD
HAYHURST, III, COREY JONES, CHRISTOPHER A. MARINO, ANNE M. MARTIN,
EVAN R. PARZYCH, HEATHER JEAN REEVES PRUDHOMME, ANDREW REHM,
EMILIO JORGE SARTORI, HEATHER SCHRADER, CHAVA S. SCHWARTZ, BRIAN
EDWARD STAMILE, MICHAEL IAN TARRANT, CHRISTOPHER ADAM WADE, EVAN
M. ZAWATSKY, JILLIAN BERNARD, JOANNA CANARAS, ZAHRA J. CASTILLO,
MICHAEL CHIULLI, SHIRLEY JEAN CRIDDLE, SHANNON CUNNIFFE, MATTHEW
GIAMMARINARO, JENNIFER M. GRAYSON, JOE MANUEL GUERRO, LUKE
CLETUS IVERSON, WIESLAWA JAMROZ, MATTHEW KUNZ, JAMES W. LEE, III,
JEFFREY MANNING, RYAN B. MARKOWITZ, SARAH JANE MEDRANO, ROBERT A.
MILLER, KANURI BHANU PRIYA, KRISTEN LEIGH PROVIX, PETER JOHN PUGLISI,
III, MICHAEL SANTOLUCITO, LAURA SHUMAKE SAVARESE, JULIET LEE SMITH,
MATTHEW B. SMITH, WILLIAM S. TIERNO, JOSEPH WALTER VAZZANO, SUIHONG
WANG, LAURA ANN WESTENBERG, JASON T. BAILEY, EVE BUCKWALTER,
ELIZABETH LEA CHANDLER, MALLORY BROWN HOIDAL, ZACHARY A. KAYSER,
WILLIAM ROBERT KRAFT, JAKE KRANSTEUBER, MICHAEL MCPHERSON, DAVID
CRAIG ROBERTS, ERIN M. ROBERTS, SCOTT RUMBERG, SEAN W. SULLIVAN,
XUAN SUN, MATTHEW TRINH, TRAVIS J. VOGT, JAISON VOVRA, HONG F.
WALROND, KELCIE KIKU BALAEFF, SREYA S. ALEX SAMUEL, KERRI J. ALLEN,
STEVEN CALDER, CAIRO J. CARR, SHO CHINEN, DAVIN LEE COTTLE, JEFFREY
M. CROFT, JACQUELINE MARIE DEMEO, JESSICA DEYO, ALLISON PELTIER
GILLAM, WILLIAM T. GUTKNECHT, CHRISTIAN RYAN DANIEL HALLIGAN,

JENNIFER L. JOHNSON, CHRISTOPHER W. KING, BRETT E. KIRKLAND, MARK
EDWARD MARTINEZ, DANIEL MATTAR, JANA MILENSKY WEISSMAN,
BRADFORD MOYE, MAYA E. PROCINSKY, MICHAEL RATH, XUEMEI REN,
MICHAEL L. STEELE, RYAN S. SVORINIC, RYAN VERKAMP, YUAN ZHANG,
KAYLA L. BARRETT, NILES REID BERGSTROM, JILL KAYLEEN COLGAN, KAYLA
MARIE FUTCH, JOSEPH GIBSON, KAITLYN HARTWELL, ALLISON C. HYLTON,
DANIEL P. JENSEN, LUKASZ KWIATKOWSKI, DANIELA LUNDIN, ALISON J. MOSS,
IRFAN A. RAZA, JATINDER SINGH, JIN XING WANG XUE, ALANNA COOPER, ERIN
ELIZABETH DONIA, BRIAN ROSS DOUT, ERIKA ELKO, ERIN J. ELLIOT, CHASE
MICHAEL GARDNER, KYLE ANDREW GASAWAY, SEAN PAUL HATHORN, RENNIE
HENRY, THOMAS M. KERR, III, MAURA HELBERG LANGE, JAMES J. LENIHAN,
III, TRINITY MARCIA MASCOLA, JULIAN JOAQUIN MURRIETA, NICHOLAS PAUL
NORDMAN, ALAN WILLIAM ROEDER, MATTHEW WENZEL, LAURA WESTENSEE,
DAVID JALETTE, ASHLEY MATRAK, ANDREW PULITANO, ALYSON L. REIMER,
ALLA SHUTYI, BRYAN VAN DEMARK, DA WANG, EMILIE J. BRITT, JESUS
COMENDEIRO, FREDERICK JAMES COWAN, JR., JINA HAN, GEFFERY HUBBLE,
JESSICA H. LEONARD, IAN NICHOLS, DREW HARRIS ROSEN, JACOB SPEAR,
JONATHAN WIENER, KARA N. BEVIS, STEPHANIE ECKARDT, KEVIN ELLIS,
JOSEPH F. FRANZONE, KRISTOPHER GLASER, SAMANTHA M. HUNT, MATEJ
KOLLAR, PAUL A. LARKINS, KIMBERLY LAYDEN, JOSEPH T. LEONARD, SARAH
K. LINDHOLM, KRISTEN MCFARLAND, REBECCA O'MALLEY, LUKE ORZAG,
KATHERINE A. PANZARELLA, MAGEN M. REYOR, ROHINI R. SETH, CHELSEA
NEALE COLLINS, JOSHUA TIMOTHY DAHMEN, ASHLEY A. DARDEN, NICOLE
DAVIS, JARED BRICE FILUS, ASHLEY HOLMAN, JESSICA MINOR, MELISSA
MULICK, WEI SONG, BRIAN WALKER, CHAD W. WONDERLING, KELSEA ECHO
YU, STACIA CHARLAND, JENNIFER L. CROWE, JONATHAN DEBEAUMONT, MARC
FERRIELLO, DANA MARIE GANSKY, ASHLEY S. GUTHMANN, JOHN HAYS,
JEREMY D. KLINE, KELLY MARIE LOCK, SARAH TUCKER MAHAR, KRISTA
SUZANNE NIEBRUGGE, RYAN RAY OLSEN PAINTER, KRISTINA RENGEL,
CHRISTINA M. SAIA, ANN PATRICIA SALAMUNOVICH, DONALD SHAW, BRENT
VETTER, RONG WANG, DAVID W. ALLEN, AMANDA AUTHEMENT, DANIEL A.
BENNETT, LEIF E. BERGQUIST, HEATHER K. BLAKE, KERRY L. BLATT, LAUREN
M. BROWN, EMMA COLACICCO, ADELE M. DOMINGUE, APRIL L. DOTEN, JAMES
W. FORSYTHE, LACY R. GLASER, JEREMY R. JOHNSON, JENNA H. KARMEL,
AMIT KUKREJA, JASON LALK, DANIEL N. MARRONE, GLENN PALILLA,
JENNIFER M. PEYTON, AMANDA RAHNER, FAY M. RICHARDS, DINO J. ROSSI,
CHRISTINA RUIZ MINESIS, CESARIA RUTIGLIANO, FRANK R. SOUSA, HANA
STELZER, IDREES TILY, CHERYL TRIPODI, RONGCHEN CHEN, SOPHIA
CHOWDHURY, RYAN L. CHRISTIE, SARAH F. KUHNE, SAMANTHA S. LIAO,
THOMAS F. LISNICH, YU-HAN LO, REBECCA MOSHER, TERRYANN A. ROBERTS,
RENEE A. SAPP, SHIRLEY SUET WAI SO, YULIYA SPEKTOR, TRACY A. TANKARD,
MICHAEL ARCURI, DREW R. FROEHLICH, JENNIFER M. INTERLANDI, MICHAEL
A. JABLONSKI, MICHELLE M. KRAUSE, CASEY LOCK, SCOTT R. NUNEZ, PRIYA
PATEL, KATE PINNEY, AMANDA L. SHAY, INDRE STUNZENAS, KALIOPE

TSOFLIAS, ATUL PRASAD ADHIKARY, SISAI A. BIRHANU, VANESSA BURNS, KERI A. EHRLICH, SETH T. FICK, JENNIFER C. HALL, MATHEW J. HOWARD, KATHERINE R. JOHNSTON, BENJAMIN J. SIEWART, MEGAN EILEEN SMITH, ANDREW J. TERRERI, AMY ELIZABETH VOGT, JESSICA LEIGH WILLIAMS, ELISSA SHERYL YORGEY, CANT CHARLES CHRISTOPHER, STEPHANIE R. CONTI, AREN J. COWAN, BRYAN DAVIS, EDWARD DIASIO, ANDREA DIAZ, CARA ANN JUFFER, BRENT E. MCLAREN, ALVARO NARVAEZ, ANTHONY NUSBAUM, BRIANNA R. TRUEX, BRIAN S. ZALEWSKI, BRYAN KYLE ZERR, MICHAEL D. DANTONIO, SARAH GILTNER, MICHELLE D. HARRIS, TRACEY MONDAY, SHANNON LEE MORROW, LUISANA BONILLA OBRIEN, ZACHARY A. SCHAMAUN, VANETTE E. TORRES, MARK VAN WINTER, THOMAS J. ZUBULAKE, JONATHAN BINGHAM, JULIA BUSHE, KYLE JOSEPH CHAGNON, LAURIE CHEN, JAMES A. DOREY, LAURA GUARRACI, JOHN R. HAMILL, III, JENNIFER SHEA KRATVILLE, JUSTIN S. NORTON, GAYLE ROBIN PATASNIK, ERIC JOSEPH PAULSON, JESSICA ERIN SIMPSON, CHRISTOPHER O. WEISS, JUSTIN GREGORY WICKS, JOSHUA D. BICKNELL, CHRISTOPHER M. CHIARALUCE, JOHNNY ACOSTA, NATHAN FEDDERS, SPANNOS CHRISTINA PAPSCOE, KRISTEN TROIA, AMIR ALI, AMY H. BROUSSE, ENOCH CHUNG, DENNIS M. DELUDE, KAREN E. GORZYNSKI, OSCAR LONDONO, SOPHIE Y. MALATI, ANDREA S. MOSHER, ASHLEY PHILLIPS, MATTHEW A. ROSS, AMANDA RUBEOR, DAMON T. SMITH, KYLE A. STARR, ARIEL TAYLOR, MICHAEL T. VISCONTO, STEPHANIE M. ADAMS, NICOLE ELIZABETH ANDERSON, AMIR F. ASLAM, NATHAN EDWARD BERTSCH, PAULA A. BOONE, CHRISTOPHER CAPICOTTO, DONG CHEN, JOEL COFFEY, DAVID CURTIS, JANINE JOYCE DEJESUS, DOMINIKA EWA PABON, ARLEY R. EWALD, LAUREN GOLDFARB, BONNI GROSSMAN, SCOTT T. JUGAN, SARA A. LASEK, PIETRO MADDALENA, JONATHAN MARR, REBECCA MIELNIK, BOGDAN MILIN, CHARLOTTE NICHOLSON, JASON OWEN, ELLIOT PARKS, VINCENT J. PASSAFIUME, MORGAN M. PEARSON, JOHN M. PONTECORVO, LAUREN T. QUINN, MIRAN SEO, GINA TRICARICO, RAMON VALLS, DANA M. VAN NOSTRAND, VALARIE ANNE VAUGHAN, JONATHAN R. WARRINER, HILLEL WEINGARTEN, HUI ZHI, YI ZOU, JOHN M. BUTLER, ADAM CHRUDIMSKY, CAITLIN C. CLARK, ZACHARY J. CYMAN, JAMES R. DUNCAN, III, CHRISTOPHER FURLONG, MATTHEW C. GADZINSKI, DYLAN C. GFELLER, ETHAN J. GILLER, KRISTINA M. HARRISON, KRISTIN N. HOFFMAN, CHRIS JONES, GENNA N. LOVE, ASHLEY PROSEK, JOLENE N. RABENA, MICHAEL SPANO, TIMOTHY J. STREHLOW, GREGORY S. TORBIC, THOMAS B. WILSON, STEPHANIE A. YESNOFSKI, BRANDON D. BHAGAT, JUSTIN B. BOBUS, WARREN CHEN, AARON CHEUNG-KWONG CHAN, JASON DALE, DONNA V. DE VERA, BEILAI GE, BRANDON RUSSELL GEORGE, YING CHEN MCEWEN, ANI SUSAN MENENDIAN, DAVID J. MURRAY, KATHERINE L. NORDMAN, KATHERINE OMURA, DOMENICO PONTRELLI, SERGIO D. RAMOS, ALLISON K. SANDEN, KUNDAN SANDHU, MELISSA S. SCALICI, LAUREN SCHAEFER, JESSICA H. SCHATZ, CHANELLE TAKEMOTO, NATHAN L. WILBUR, VERA ZHURAVLEVA, INESSA ZOLOTAREVA, YOANA ALLEN, KATHERINE L. AYE, CASEY J. HOCEVAR, BRITTANY K. HOPP,

SAMANTHA D. LEONARD, TIMOTHY MCCORMACK, ERIC D. MEAD, SARAH E.
MORGAN, JASON ROSIELLO, JOHN M. SCHENK, GALEN P. WARD, TOGOS ZORIG,
VINCENT J. BATTAGLIA, JR., SADIE L. CARSON, THOMAS A. CHON, WILLIAM E.
CLOUTET, III, MATTHEW B. DANIELS, MICHELLE EPSTEIN, STACEY GILL,
LYNNIE HICKEY-MEHIC, VANITA KATRINA, TIE G. LASATER, KEELY O.
LINDSTADT, SCOTT E. MIDLA, NEIL M. MORGAN, MICHELLE L. MYSUNA,
MARGO PACANOWSKI, ZACHARY J. PETTINGER, SAMANTHA RICHARDS,
THOMAS W. SCOTT, TYLER SKELTON, JOSHUA D. SMITH, RAINY LEFORCE
SPRING, KATHRYN E. TOWLE, ASHLEY A. ADEOGBA, JENNIFER L. ARTHUR,
NINA J. AVES, DREW M. BIDDLE, ALISHA BRUMBAUGH, HEATHER BUSS, DIANA
CHIA, JANICE DACLAN, JOSEPH DECARDI-NELSON, ERIC HILLS, JAIME
HINOJOSA, FARAH KHAN, GALIB R. KHAN, HYANGSOON LEE, JOSEPH N. LEVY,
MAILE M. LEWIS, JESSICA H. LOTT, MIGUEL A. MARIN, DEAN MATTERA,
DANIELLE A. MCCOY, ALLISON MCGUIRE, STEVEN OSCARSON, JOSEPH J.
ROTHER, ANN SALINAS, DANIELLE A. MCCOY, ALLISON MCGUIRE, STEVEN
OSCARSON, CHIPMAN R. SEALE, YOUNG SEOH LEE, ANTONIOS
SPILIOTOPOULOS, MINA LISA TEYMOURTASH, SHUN TUNG LAM, JEANNINE
WHEELER, MELISSA L. BROWN, DANIELLE L. CAHILL, NATALIE C. CUSAT,
KRYSTEN M. GENAWAY, ANDREW T. KWITOWSKI, SAVANNAH LEHMAN,
WILLIAM S. LOCAKRD, III, ALANNA ZAHORA, MAX H. ESSOH, PATRICK
MICHAEL FUNK, PATRICK C. OFORDIRE, DEREK SYKES, SUMI CHOI,
ALEXANDRA D. CHOU, ASHLEY PEYTON DISINGER, CATHERINE E. KAYLOR,
SARA LENGLER, STEVEN S. MERRILL, DENAIMOU C. N'GARSANET, LAURA
RATH, LAURA ELIZABETH REYNOLDS, LESHAWD T. THOMPSON, PATRICK A.
THOMPSON, MATTHEW D. YTZEN, BRENT E. ARNOLD, YAELLE E. BERNSTEIN,
YUQUIN WEN BOHANNON, EVELYN CHAN, THOMAS J. CHLOE, EVAN M.
DASHE, JOSEPH GENTZKOW, KAREN L. JUAN, JOHN P. KINDELIN, JACKSON Y.
KUO, JANICE LUO, GREGORY T. MONTGOMERY, LISA M. MORGADO, ANDREW J.
PORUBCAN, JING TAO, TAKEO UCHIDA, JASON R. WALTER, CHUN Y. ZHANG, SU
ZHENG, WILLIAM L. FINE, AMY A. HILLENBRAND, STEPHANIE N. JOHNSON,
BENJAMIN JURGENS, PHILIP MEZHERITSKY, JUSTIN N. BEEBE, KATHERINE M.
BEEBE PICKERT, CHRISTINE L. BLAYLOCK, GAELAN BOSS, ANNA E. BROUDY,
COLLEEN M. CATALANO, ERIC DICKINSON, MANAL ELHAG, JOHN G. ESTELLE,
JOHN P. HARRIS, ANDREA HENRY SPECK, JENNIFER L. HOWELL, JOHN M.
JAMBERS, DIANA S. JOHNSTON, JAMES R. KIRIHARA, JULIE M. KNIGHT, DAVID
KOEHLER, MICHAEL H. LOVECRAFT, KEVIN KEUN W. PAK, MATTHEW A.
PITETTI, CHRISTINE A. REED, LEIGH ANNE ROZYCKI, MEGAN P. SATO, MELISSA
STOKES, MATTHEW S. TAYLOR, KEN UKAI, LAZARUS W. VITTAS, ERIN C.
WALLS, DUSTIN F. WHITE, YIM CHI CHENG, VIRGINIA GRZENIA, PAMELA S.
LEE, NATALIE M. MARSHALL, CHARLES E. MERTZ, II, JILL N. MINSHEW,
SHAWN M. PARENT, ROBERT G. PYRZ, ROBERT G. PYRZ, MATTHEW SCHWERIN,
PAUL R. SCOTT, RICHARD S. SEGER, III, SARAH R. SIMS, UYEN TRAN, SPIRO M.
DOUNIS, PAUL KREGER, LEO A. MATZ, KIN KEI KEVIN MOK, NICHOLAS S.
WINKLER, MYRA S. ASLAM, CHARLES BAUMANN, STEPHEN BOSCOLA, ALISON

G. BROOKS, RYAN D. CARR, BRIAN J. COGLEY, JESSICA R. CONWAY, TIMOTHY DELUCA, BOBBIE JO EMOND, ASHLEY E. FALTER, DAVID S. GUY, TANYA R. MAZAKIAN, MEGAN L. OPSAHL, JULIAN PAIK, JEFFREY W. PARAMORE, ARPAN PATEL, ALANA PERINI, LAUREN PLUMLEY, DAVID B. REITER, STEVEN B. RUSSELL, JORDAN SAMET, ROSS SILVERMAN, MATTHEW SKELLAN, RACHEL A. STUART, GORDON E. WALTERS, PETER W. WONG, KEVIN W. YOUNG, KERRI BLUM, KYLE V. BROWN, THADDAEUS M. BURGESS, NATHAN E. CARLTON, PETRUTA L. GANTOI, MICHAEL D. GOGOLEN, RONDAL HARRIS, JR., TAMARA R. HOOK, MICHINORI KANEKO, SARA LEE, FADIL LIMANI, PRPARIME LIMANI, JENNIFER A. MATOUS, SEAN A. MCGOVERN, BRITTANY L. PANCHERI, KELLY B. POSTEN, JESSICA R. PRESTON, THOMAS A. REID, DAVID CHARLES ROBERTSON, ALISON M. ROONEY, JILLIAN SCHLAUD, ROBERT L. SCHLAUD, JR., JACOB O. TECH, JUSTIN M. TERZO, WONDIRAD A. TSEGAYE, EDWARD A. VALENTINO, CHRISTOPHER A. WELCH, DAVID C. WHITNEY, ANDREW J. ZENS, JOHN C. ADRIAN, KYLE L. ALEXANDER, AILDA ALUSHI, CHARLES W. CRAWFORD, ERIN DIFFLEY, JENNI L. DOLLAHON, HOLLY C. DONLEY, MEGAN R. GILBERTSON, BENJAMIN D. GOODE, ERICA A. GOODE, KARA A. PAULUCH SCHRODER, DANIELLE M. ROCHE DUPLESSIS, LAUREN SELLARI HUFF, TERESE V. STREHLOW, KATHERINE A. SWEET, SCOTT D. UNNERSTALL, QIONG WANG, LILLIAN N. FRAGUADA VIALIZ, ARTSIOM ANISKO, KARISHMA BARUA, JIESI CHEN, SHANNON COMRIE-BOOTH, ZACHARIAH COOPER, JEREMY P. DUGAN, NATHANIEL EDELMAN, EDWARD A. GARCIA, KEIKO HIRAKAWA, CONNIE M. HU, BRADLEY K. JASTROW, XUEJIAO JIANG, ANTHONY KIMANI, EMILY KUPEC, SAMUEL A. KUZNETZOFF, TIMOTHY D. LONG, MICHELLE S. LUK, TIMOTHY I. MILLER, MARY E. NADJARIAN, KELLY PRICE, JANETTE RICKS, IVI SANTOSO, BRYAN SCHROEDER, ALEXANDRA K. SNUKAL, YOUNG TAK SONG, SHIRLEY-MAY SOONG, MIKIKO SUGAYA, CHRISTINE SULLIVAN FRAGA, JAMES R. TAYLOR, JENNIFER THOMPSON PETER, JAY M. VERRILL, TRAVIS J. VIERA, WINLY VUONG, VALERIE WARE, ANGELA WEN-AN YU, DENISE WORSLEY, JONATHAN W. WRIGHT, THOMAS X. YAO, XIAOJUAN CHEN, EBONY HARRIS, JAMES RINALDI, STACEY M. ZAFIROFF, MICHAEL S. BECKER, JEFFREY BLAND, ADAM L. BOCKMAN, RONAK BRAHMBHATT, IRINA BRIMMELL, KELVIN G. CHENG, MEGHAN R. COOPER, SEAN P. FISCHER, MARCUS A. FLYNN, SARAH N. HARPER, PAULETTE M. HEUR, LORETTA G. HILL, KELSEY E. HOFACER NEEL, WEILI HSU, DAVID A. JOHANSSON, AMANDA K. JOHNSON, ROBERT D. JONES, VALERIE T. KAUFMAN, PAUL W. KEMP, KEVIN D. KNIPP, MERLYN A. KUSHNER, ADAM D. LAKE, ALLISON A. LESLIE, KANG LI, SARA MAGGIO, ANNE MALE, ADAM T. MARCHANT, MARISSA MAYHORN, TERRANCE L. MCKNIGHT, JONATHAN T. MCPHARLIN, ROBERT J. MIRANDA, KRISTEN L. MUNCIE, ALIESHA NATHU, ELIZABETH A. PALMERI, MATTHEW C. REIGHARD, WILLIAM B. ROSS, POONAM SAKHRANI, ELIZABETH M. SIMMONS, STEPHANIE C. SNODGRASS, JUSTIN SPIKE, SARON H. TEGEGNE, KATIE L. THOMAS JACKSON, MARIA G. TRUJILLA, KIERA J. WATSON, ERIC R. WILSON, ERIC YU, JEFFREY W. BARLAM, MATTHEW M. CLAYTON, SHELLEY GULATI, CHRISTINA RUIZ, TYLER J.

WHITAKER, AMBER M. AHSMANN GOLDMAN, MARGARET L. AYCOCK, SARAH
N. BOCKS, MATHEW BRINSDEN, JAMIE BUENZOW, JAMES A. BUMBULSKY,
RINKY CHOPRA, KIMBERLY C. CONNER, KATIE COX WESTGARD, MARK J.
DELUCA, ANNA C. GULLICKSON, THOMAS HISTED, ALYSON P. LEDESKY,
DOUGLAS D. MARTINE, PAUL M. MASTARONE, REBECCA J. MASTARONE
ELLIOTT, CRAIG MCNEILL, PEDRO LABORDE MUNIZ, NICHOLE A. SERINO,
MARC JACOB SHELTON, CHAU M. TA, EVAN L. WILK, MEGAN WILLIAMS,
DAVID B. BAWEL, KINGMAN CHAN, JR., MEGAN ERWIN, JAVONNA E. JAMES,
BRADLEY T. OWENS, KEITH B. PAPISH, LYNN K. SPOKAS, MICHAEL W.
TRUETTNER, BENJAMIN B. ANDERSON, SCOTT CAMPOBENEDETTO, JENNA N.
COFMAN, MICHAEL CRNKOVICH, FAICAL ELHAJJAM, BOND N. FERGUSON
MUNSON, TIMOTHY D. JOHNSTON, BRYAN A. KEELE, DAVONA KELLY, YELENA
KOTSAR, CONSTANCE LEUNG, MENG LOR, SARAH MCCUE, WASSIM BERRO,
HECTOR ESTRADA, JULIAN D. LEE, LAUREN LIPPINCOTT DARSEY, KATHLEEN
M. AUTRY, BRIANA G. BISHOP, WENDY R. DALRYMPLE, EDWARD DEMONE,
STEVEN P. DUFFY, MADISON R. DUVALL, GRACE T. GUTBERLET, JUSTIN T.
MAIER, BRADLEY A. OMALLEY, DANIEL REX, SARAH J. ROSS, STEVEN T.
SHULTHIESS, ALLISON K. SLIFE HRITZ, MICHELLE L. SZAMES, ADRIENNE D.
TANKER, COURTNEY ANN WIEGARD, ADAM G. AVNI, ELIZABETH H.
CUNNINGHAM, PATTANAN DECHARAVEEROJ, MELISSA K. LANGONE, MENG-LIN
MONA LU, DAVID C. ORASIN, HOLLY M. SAXBY SOWERSBY, DANIEL P. THOR,
KELLY YI, JILLIAN M. MCCOOL, KATSIARYNA TSYBINA, FRANCIS ADAMS,
HERMINE BARSEGHIAN, JENNIFER K. BAUMAN, ALLISON CHEN, BRANDON
GEMOLL, CHRISTINE ANN GIBSON, ALEXANDER J. GILBERTSON, JOHN STEVEN
HILBORN, HEIDI LYNN HOLMES, CONNIE HORNG, DAVID KANG, CARLI KISABA,
CRISTOBAL LAMAS, ALLISON LEIGH MOORE, AUSTIN R. LEWIS, BRENNAN J.
MALONEY-KRIPS, AMANDA J. MYERS, BRYAN PATRICK NELSON, ERIC M.
PANNELL, CODY PARKER, ANKUR B. PATEL, JOEL B. RINTOUL, BRETT I.
SILVERMAN, ANNMARIE STUART, JOVAN TUCKER, ALEXANDER VYSHETSKY,
ASHLEY N. WESTMORELAND, CALVIN WU, ANGELA YU, SHANAN AHMED,
RONALD F. BECK, T'LANE B. BRIGGEMAN, TERESA CARRANZA, KRISTEN
CHONG, NICOLE C. DORAN, KUNAL DUDHEKER, THOMAS DUFRESNE, SHANE
HUIBERTS, ROBERT KARR, THOMAS P. KEEGAN, REBECCA A. KRAMMEN,
MONICA L. LONG, SHUANG LU, KEENAN JAMES MCCULLOUGH, TREVOR D.
MCKENDRICK, KELLY MERIANO, STEVEN MURPHEY, MEGUMI KOMIYA
NAKAMURA, MICHELLE OKABE, NICHOLAS A. PAONESSA, SEAN M. PAUL, NEIL
SHAH, RAYNA J. SWANSON, THOSANA TAN, SERGEY TKACHEV, TRACIE
TOGAMI, KRYSTLE TOLENTINO, MOONY C. TONG, KENNETH TY, STEPHEN VAN
LYON, SARAH VANLANDINGHAM, KATRINACA E. WARE, VICTORIA E. WHELAN,
SELENA R. BAILEY, COLLEEN BRENNAN, KRISTINA M. BROSS, ELIZABETH D.
BROWN, CHRISTOPHER J. CALVEY, LAUREN DANIELLE CAPLAN, SUSAN
CHARTIER GOMES, DAVID E. CHINOSKI, KRISTEN M. COULOMBE, CHRISTINE
DEBONEE LABRIE, KRISTINA ENG, VINCENTE FIGUEROA, HAYLEY L. FORD,
ABBY GRIESEDIECK REEVES, DAWSON HALE, JORDAN A. HANDSAKER, CALEB

E. HANSON, AMANDA S. HOFFMAN, ALAINA JO, JEFFREY V. KENT, JR., KYLE E. LANGNER, REANNA D. LEITAKER, MICHAEL L. LEMBO, EDWARD H. LEVY, MARVIN K. MAYOTTE, RACHEL N. OTLEY, DANIEL PARKS, CAROL A. PARRISH, DAVID PIATEK, MICHAEL D. PICK, YANINA REZNIKOV, MARISA SALERNO, AUBREY A. SCHMIDT, LENNON SMITH, EUN HYE SUNG, THAI TRINH, SHAVON TUCKER, MICHAEL VAHIDTARI, AIMAN M. WAHDAN, MATHIEU WEILL, GENEVA WIGFALL, MATTHEW E. WREN, DOSANNA WU, DANIEL WULLSCHLEGER, EMILY R. BORIACK, TRENT C. BROWN, CONNOR DONNELLY, PETER J. HELF, CHAD B. UNDERWOOD, DEL CIELA BASILIO, EMILY BOECKMANN, SARAH E. CALLAN STANCLIFT, WINNIE CHAN, LOGAN J. CHRISTIANSON, ROBERT S. CHUN, ADAM D. COLBA, MICHAEL D. CORIELL, MICHAEL W. DERINGTON, MICHAEL J. FEDUN, BRITTANY L. FEDUN FIGLIOLINO, CHRISTOPHER M. FERRELL, ZEB F. HIGH, JR., RACHEL HOUDEK, PRESTON JEUNG, SUNITA KUMAR, ANDREW V. LINVILLE, KEVIN M. MCBRIDE, ELIJAH MCINTOSH, STEVEN A. MICH, ERIC NOWAKOWSKI, STACIE M. ONKEN, YULIA SHMATKOVA, MICHAEL T. STORIN, ADAM TRAVIS, SAMANTHA ZIMMER, JUSTIN B. COOK, DIANA A. MCARDLE, PENELOPE YURKOVICH NORMANDIN, MARIA DEL MAR HERNANDEZ, CARMEN M. TELLEZ, MEGAN E. TOMS HUMBER, AARON D. GOODMAN, CLAYTON J. HUFFMAN, RYAN J. KEYS, SAKINA KHAN, XIU T. KHAW, ELIZABETH REISMAN, DAVID D. THOMAS, LISA A. BLAND HORTON, KRISTEN N. KELLY, MELISSA MCQUEEN CURL, MEREDITH ROGERS MCCARTHY, RYAN M. SWANER, STEPHANIE M. ALDECOA, KIMBERLY ARGY, LISA M. BAKER, JESSICA R. BECKENDORF, JOELLE M. BROWN, ROSS BRUENING, JONATHAN W. CADWELL, DAVID C. CARLEY, CHRISTINE CHIARAMONTE, ANDREW J. CHOLY, MICHAEL DETER, NICHOLAS A. EBERSOLE, RACHEL M. ENGLISH, SARA R. FLOREANI, SANTO S. GRAMANDO, III, DAVID HA, DALIA KLIMKOWSKI, MARK KRAMER, CHRISTOPHER K. LEE, YU JIN LEE, LUCORIN J. MATHIS, ANTHONY J. MATULAC, DANIEL T. MCNEVIN, KRISTINA MENDEZ, AMANDA MENNITI, JOEY RODRIGUEZ, IAN A. RUDDOCK, DANIEL R. SABET, MIA K. SAILS, KATRIN D. SALTA, FATIMA SEDIQZAD, JEEVANJIT SINGH, CRENA E. SPRAGUE, CHRISTOPHER I. STROTHER, DAVID SUH, THOMAS R. TARSITANO, EDMUND TONG, GUILLERMO E. TRIGO-MENDEZ, NY-LIANG WANG, RICHARD L. WARD, ALEXANDRA WITTENBERGER BAKAMUS, BILL R. WLECZYK, ERICA YAMAMOTO, CAROLYN YIP, HUIFANG ZHU, JAN-MICHAEL DE VERA, DAVID P. GRIMNER, RONALD KARROLL, JR., MATTHEW A. LAPOINTE, JONATHAN D. LEINS, JACOB R. LINVILLE, RYAN MEALS, YULIANA RUFF, JAMES K. RUSSELL, JASON SATTAR, NOAH SULLUM, NABIN BANSKOTA, THERESA KHUU, SAMATHA M. SNYDER LANCE, JUAN P. BARAJAS, MATTHEW BIRMINGHAM, CHRISTOPHER L. BURGESS, PHILLIP M. HEU-WELLER, TUAN PHAM, RONNIE ZABIGUY, DANIEL COLVIN, ADESUWA ASEMOTA, KERRY ANN BERG, ASHLEY BILLINGER, DANIEL CHEN, KELLY A. CLARK, JEROMY R. DAVENPORT, MARK A. DEBONEE, CRISTINA MARIE DEL BUONO, STEPHEN F. ENDRES, ERIN M. EVERLY, TOMOKO FURUKAWA, ANDREW J. GALLEGOS, RACHEL L. GUILD, TAMEKA L. HAMMOND, ANDREW HARDY, DAYNA E. KITTER, NEIL L. KOROTKIN, VANYNA M. LOUIS,

KATLIN A. MICK, MEGAN ORR, CHRISTEN A. PAGE, ROBERT M. PETERSEN, ANTON SAMRAI, SEAN SCHRAM, JENNIFER D. SING, BRIAN D. STOCK, KATHERINE L. THOMPSON, ASHLEY M. TURNER, SAUL VERBERA, JENNIFFER VIELMAN-VASQUEZ, RICHARD ARMSTEAD, ERICA BARHAM, DIEGO A. BELLO, MATTHEW T. HAINES, AMANDA B. KANE, CARLY N. KINTZING, KEVIN M. OLKOWSKI, MARIA RIVERA, STEPHANIE T. UNKART, KENJI NONAKA, ROBERT III VIDAL, MYLA N. CHATMAN, ZHANNA A. FREEMAN, SUMIAH A. JABER, SARAH KONEMAN, VIVIAN K. LAU, DANIEL MCCORMICK, SANDRA RAK, DAVID C. SCOTT, DAVID C. SCOTT, BRIAN SHAW, DEREK P. SNIKERIS, RYAN M. SPURLOCK, KUMIKO TANAKA, ELLEN VOLODARSKY, KRISTIE DAVIS ZAPF, AMIRA MORIS FARAG-BESHAY, HEATHER L. HALL, MATHEW S. HANLEY, FRANCINE HOYLE, LAUREN E. INSCHO, JENNIFER KLINE, DANIEL J. ROBERTSON, ANITA J. TSE, MUNEHIKO YUZAWA, MARC C. ABRAHAM, JULIA ABBOTT, MAYA ABDULKARIM, KYLE L. FLETCHER, OLGA V. IVANOVA-MENDEZ, IGNATIUS JACKSON, SEAN MCKENNA, SHARON BRICKMAN, NOELLE M. CARLO, CHRISTOPHER R. DOTSON, CARA S. GRIECO, JENNIFER H. HEIST, JAMES D. MCCLELLAND, JR., LAUREN A. MORRIS, DEREK W. RICHARDSON, ERIC YEE, ASHLEY BROOKE STROBEL, JESSICA MARIE BUSHEY, ELIZABETH CHO, MAI ENDO, SHAWN L. HATFIELD, GABRIEL KANGAS, ANTHONY K. LAGAT, LAUREN C. THORNTON, REUBEN ABITBOL, ARI MICHAEL BARUCH, THEOPHILOS S. CONSTANTINOU, LISA M. DEANE, MATTHEW R. GRIFFIN, JOSEPH KAUFMAN, LESLIE KEATHLEY, STACY MCGOLDRICK, CHENGCHENG SHI, KRISTINE P. SOMERA, JILL LEAH STANLEY, ANNETTE SABRINA WILLIAMS, BETHANY N. ADAMS, CHARLES CONRAD BOETTGER, SHAWN O. GILLESPIE, MARINA KALAN, ANDREW JOHN LEAVITT, ALBERT LI, SARAH L. LUNA, JEFFREY P. MCNERNEY, KAREN MEYERS, JENNIFER RIOS, JESSICA H. SCHATZ, LILY SITU, HEIDI SMILDE, ZHEN SU, PHILIP TWEDE, FLORA KANG-JUNG WANG, HUA-JUNG YU, NATHAN ANDREW BELL, KRISTEN BURBANK, MICHAEL DEAN DAVIS, DAVID EDWARD FELDMAN, LEIGH GEIST, MUHAMMAD UMAR HAMID, KATHERINE ANNE KILGORE, CHARITY NICOLE LEE, LACRESHA ERONNE MILLNER, ANTHONY SASSALI, RYAN STROUT, DANIEL HADI TABIB, ROBERT C. THAYER, LINA WANG, ANGELA GUERRERO WILLHOFT, TANIA RHANDA AHMAD, HUSSEIN SALIM ALLIBHAI, AUBREY MARIE BICKMORE NEELEY, HEATHER L. BORING, ANDRE COMPARINI, MARK PRESTON BROUGH, BRITTANY NICOLE LAY, GREGORY ALAN MORSE, STEPHANIE PHAM, RANDY R. PLACZEK, ROBERT REDLING, AMANDA SHATZMAN, ADAM JOSEPH DE LEUV, KARIMA WARNER, DYLAN WILLIAMS, HENRY YMAS CROCKERHAM, JR., LESLIE ELLEN DAVIS, JOHN DEVECCHI, JR., ASHLEY ROSANNE DWYER, KEVIN JOSEPH HANNAN, AMY HERTZ, JING HUANG, MOHSAN KHAN, LAP SHUN KO, ERIKA RYAN LARSON, PEGGY LIU, PATRICK J. MCCADDEN, ROBERT M. MERENDA, JR., NITIN MUNDRA, JARED PAUL NEELEY, CHEN NI, CHRISTINA MARJORIE PANAGEOTOU, HEATHER R. ROGERS, PHILIP TUINUKU SMITH, KYLE VITALE, WILLIAM J. CASH, JOSEF H. FARBSTEIN, OMAR J. NIEVES, JENNA L. ANDERSON, CHRISTOPHER D. BUSHEY, JOON HWAN BYUN, URIM CHOI, ANDREW T. COX,

DAVID FREUND, PATRICK J. GARBANI, JASON HUISMAN, JOHN LAVIN, JEANETTE L. PECK, JONATHAN POLDAN, JEFFREY T. WONG, ANTHONY C. ZACCARELLI, BROOKE A. BALLANCE, KEVIN BEKAS, EMILY BARZEE HERRICK, TAEOOK KWON, TRISHA LEWIS MARTIN, ERIK H. OLSGAARD, VINCENT PISANO, COLIN SHINNERS, SATOMI TAKAHASHI, ASHLEY TINNIRELLA, PRIYA VASUDEVAN, OBIANUJU LINDA-MARY EKWEGBALU, MICHAEL A. LEVIN, DAVID B. LANDRUM, MIKI NAKAZAWA, STEVEN G. OHL, JENNIFER BAI, KYLE BAKER, FELICIA BRENNER, CHRISTOPHER CACANINDIN, PATRICK CHAN, EDWARD FREIWALD, BRYAN GOLDFINGER, STEPHEN HERZWEIG, ASHLEY JOHNSON, LESLIE JORDAN, ANDREW KATZ, LAURYN KING, JEFFREY KOSLOW, THU LAM, LI LIU, HEATHER MORELAND, KETURAH MOSS, OLUTOSIN OKUNOREN, CONSTANCE ONYIAH, ROBERT PABST, ANTOINE RAIE, MATHEW ROPPO, ANNA SHEYNKMAN GORIN, MELANIE SO, BRYAN STANISZEWSKI, BRETT STIEGLITZ, JESSICA VAVITHES, JULIE WILSON, MELISSA BROWNFIELD LUISO, JAMELLE A. NELSON, SAMANTHA ANDEREGG-BOTICHI, TIA ALISHA FINN, MICHAEL ADDISON HARRIS, KEI KURAMOTO, HUI SHAN SEE, LETICIA FACUNDO, MICHELLE GARCIA, NORBERT MENDONCA, SZIMONETTA PETTERMAN, ARLENE RIDGEWAY,

*Plaintiffs,*

KYLE PIPPINS, individually and on behalf of all others similarly situated,
JAMIE SCHINDLER, individually and on behalf of all others similarly situated,
EDWARD LAMBERT, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

—against—

KPMG LLP,

*Defendant-Appellee.*

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .............................................................1

ISSUES PRESENTED FOR REVIEW .......................................................1

STATEMENT OF THE CASE...................................................................2

STATEMENT OF FACTS ........................................................................2

I.     Introduction...............................................................................2

II.    KPMG's Audit Practice ............................................................4

III.   Plaintiffs Were at the Bottom of the Audit Team Hierarchy ..........4

       A.    Partners Are the Decision-Makers on the Audit Team.........5

       B.    Managers Supervise the Execution of the Audit Plan.........5

       C.    Senior Associates Are the Audit Team Forepeople ..............6

       D.    Plaintiffs Were Entry-Level Audit Team Members...............6

IV.   Audit Associates Learn How to Perform Their Work Through KPMG Training and On the Job.....................................................8

V.    Audit Associates' Primary Duty is to Perform Routine Tasks ......11

       1.    Inventory Observations............................................13

       2.    Walkthroughs .........................................................13

       3.    Work Papers ...........................................................14

       4.    Other Routine, Non-Judgmental Tasks .....................15

VI.   "Professional Skepticism" and "Due Professional Care" Require Audit Associates to Be Careful and Detail-Oriented................16

i

VII.    Audit Associates Are Closely Supervised. ....................................................18

VIII.   Procedural History .............................................................................................19

SUMMARY OF THE ARGUMENT ....................................................................23

ARGUMENT .......................................................................................................27

I.    KPMG Did Not Meet Its Burden to Prove Each Element of the FLSA's Professional Exemption ..........................................................................................27

       A.    Plaintiffs' Primary Duty Did Not Require "Advanced Knowledge." ...............................................................................30

              1.    The District Court Should Not Have Ignored Plaintiffs' Actual Job Duties in Determining Whether Plaintiffs' Primary Duty Required Advanced Knowledge ......................30

              2.    Accounting Courses Were Not "Required" in Order for Plaintiffs to Do Their Jobs ........................................................32

       B.    KPMG Did Not Prove Either Essential Element of the Definition of "Work Requiring Advanced Knowledge." .....................................34

              1.    Plaintiffs' Primary Duty Was  Routine, Not "Predominantly Intellectual in Character." ........................................................34

                     a.    Whether Audit Associates' Primary Duty Is Routine Work Was a Question for a Jury .....................................35

              2.    Plaintiffs Did Not Consistently Exercise Discretion and Judgment ...............................................................................39

                     a.    The District Court Was Wrong to Ignore the Administrative Exemption in Defining "Discretion and Judgment." ............................................................39

                     b.    The District Court Set the Bar Far Too Low .................40

3.      Audit Associates Did Not Exercise Consistent Discretion and Judgment. ..................................................................41

        a.      Whether Plaintiffs' Primary Duty Required Consistent Discretion and Judgment Is A Question For the Jury. ....42

        b.      The Professional Standards Governing the Audit Industry and General Statements Regarding Job Duties Do Not Dictate That Plaintiffs' Primary Duty Required the Consistent Exercise of Discretion and Judgment. ..........46

        c.      The District Court Made No Finding that Any Exercise of Discretion and Judgment by Plaintiffs Was Consistent." ...................................................................49

C.      Plaintiffs' Primary Duty Did Not Require Knowledge Acquired by a "Prolonged Course of Specialized Instruction." ........................50

    1.      KPMG Required Plaintiffs to Have Only a Limited (Not Prolonged) Accounting Background. ...............................50

    2.      Plaintiffs Learned How to Perform Their Primary Duty Through KPMG's Training and on the Job................................51

I.      Summary Judgment Was Premature Because Plaintiffs Had Not Completed Discovery....................................................................54

A.      Plaintiffs Had Not Completed Discovery When KPMG Moved For Summary Judgment. .....................................................55

B.      Rule 56(d) Guarantees Litigants the Opportunity to Take Sufficient Discovery to Oppose a Summary Judgment Motion,  Especially A Summary Judgment Motion Filed Before the End of Discovery ....59

C.      The District Court Deferred Discovery Important to Plaintiffs' Opposition to KPMG's Summary Judgment Motion.........................60

I.      The Dismissal of the New York Labor Law Claims and the Denial of Class Certification Should Be Vacated....................................................64

CONCLUSION ......................................................................................................66

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................27, 42, 54

*Boddy v. Astec, Inc.*,
   No. 11 Civ. 123, 2012 WL 5507298 (E.D. Tenn. Nov. 13, 2012) ....................35

*Boucher v. Sears*,
   No. 89 Civ. 1353, 1995 WL 283742 (N.D.N.Y. May 8, 1995).........................60

*Brock v. National Health Corp.*,
   667 F. Supp. 557 (M.D. Tenn. 1987)................................................................45

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..........................................................................................29

*Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*,
   271 F.3d 374 (2d Cir. 2001) .............................................................................59

*Cotten v. HFS-USA, Inc.*,
   620 F. Supp. 2d 1342 (M.D. Fla. 2009)............................................................47

*In re Dana Corp.*,
   574 F.3d 129 (2d Cir. 2009) .............................................................................60

*De Jesus-Rentas v. Baxter Pharmacy Servs. Corp.*,
   400 F.3d 72 (1st Cir. 2005)...............................................................................40

*Dybach v. Fla. Dep't of Corr.*,
   942 F.2d 1562 (11th Cir. 1991) ........................................................................32

*Foster v. Nationwide Mut. Ins. Co.*,
   695 F. Supp. 2d 748 (S.D. Ohio 2010) .............................................................44

*Hendricks v. J.P. Morgan Chase Bank, N.A.*,
   677 F. Supp. 2d 544 (D. Conn. 2009)...............................................................44

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005) .............................................................................29

*Jones v. Hirschfeld*,
    No. 01 Civ. 7585, 2003 WL 21415323 (S.D.N.Y. June 19, 2003) ...................60

*Kadden v. Visualex*,
    No. 11 Civ. 4892, 2012 WL 4354781 (S.D.N.Y. Sept. 24, 2012)...............32, 51

*Kaytor v. Elec. Boat Corp.*,
    609 F.3d 537 (2d Cir. 2010) ...............................................................................27

*Kozera v. Westchester Fairfield Chapter of Nat'l Elec. Contractors Ass'n, Inc.*,
    909 F.2d 48 (2d Cir.1990), ..................................................................................65

*Lazoda v. Maggy*,
    900 F. Supp. 596 (N.D.N.Y. 1995)...............................................................29, 55

*Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*,
    628 F.3d 46 (2d Cir. 2010) ...............................................................................60

*Martin v. Ind. Mich. Power Co.*,
    381 F.3d 574 (6th Cir. 2004) .......................................................................29, 56

*Martin v. Malcolm Pirnie, Inc.*,
    949 F.2d 611 (2d Cir. 1991) ........................................................................28, 55

*Morgan v. Family Dollar Stores, Inc.*,
    551 F.3d 1233 (11th Cir. 2008) ..........................................................................61

*Mullins v. City of New York*,
    653 F.3d 104 (2d Cir. 2011), ..............................................................................27

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ...............................................................................31

*Nat'l Union Fire Ins. Co. v. Turtur*,
    892 F.2d 199 (2d Cir. 1989) ........................................................................29, 55

*In re Novartis Wage and Hour Litig.*,
    611 F.3d 141 (2d Cir. 2010) ...............................................................28, 41, 49

*Paddington Partners v. Bouchard*,
    34 F.3d 1132 (2d Cir. 1994) ...............................................................................55

*Pignataro v. Port Auth. of N.Y. & N.J.*,
   593 F.3d 265 (3d Cir. 2010) ...............................................................31

*Pippins v. KPMG LLP*,
   279 F.R.D. 245 (S.D.N.Y. 2012) .......................................................58

*Pippins v. KPMG LLP*,
   No. 11 Civ. 377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012) ...............20

*Pippins v. KPMG*,
   No. 11 Civ. 0377, 2012 WL 6968332 (S.D.N.Y. Nov. 30, 2012)........2

*Piscione v. Ernst & Young, L.L.P.*,
   171 F.3d 527 (7th Cir. 1999) ..............................................................40

*In re RBC Dain Rauscher Overtime Litig.*,
   703 F. Supp. 2d 910 (D. Minn. 2010)...........................................52, 53

*Reich v. Am. Int'l Adjustment Co., Inc.*,
   902 F. Supp. 321 (D. Conn. 1994).....................................................39

*Reich v. S. New England Telecomms. Corp.*,
   121 F.3d 58 (2d Cir. 1997) .................................................................61

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011) ...............................................................65

*Thompson v. Gjivoje*,
   896 F.2d 716 (2d Cir. 1990) ...............................................................29

*Trebor Sportswear Co. v. The Ltd. Stores, Inc.*,
   865 F.2d 506 (2d Cir. 1989) .........................................................59, 60

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
   165 F.3d 43 (D.C. Cir. 1999) ..............................................................41

**Statutes**

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 1331 .....................................................................................1

28 U.S.C. § 1367 .........................................................................1, 64, 65

29 U.S.C. § 207 ......................................................................27

Class Action Fairness Act, 28 U.S.C. § 1332 .......................64

**Other Authorities**

29 C.F.R. § 541.30 ................................................................23

29 C.F.R. § 541.200 ..............................................................39

29 C.F.R. § 541.202 .......................................................*passim*

29 C.F.R. § 541.301 .......................................................*passim*

29 C.F.R. § 541.700 ...............................................24, 28, 30

Fed. R. Civ. P. 23 ..........................................................2, 64, 65

Fed. R. Civ. P. 56 .........................................................*passim*

U.S. Dep't of Labor Opinion Letter,
   1999 WL 33210909 (Nov. 2, 1999).............................28, 31

U.S. Dep't of Labor Opinion Letter,
   2000 WL 34444354 (July 14, 2000)..................................52

U.S. Dep't of Labor Opinion Letter,
   2006 WL 2792440 (July 24, 2006)..................24, 30, 31

U.S. Dep't of Labor Opinion Letter,
   2007 WL 506578 (Feb. 1, 2007) .......................................35

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the federal claims under 28 U.S.C. § 1331, because this action arises under laws of the United States, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.  This Court has jurisdiction under 28 U.S.C. § 1291.  Final judgment was entered on February 15, 2013 (Judgment [Dkt. No. 364], Special Appendix "SPA"__).  Plaintiffs timely filed their notice of appeal on March 11, 2013.  (Notice of Appeal [Dkt. No. 365] Joint Appendix ("JA") __).

## ISSUES PRESENTED FOR REVIEW

Whether the district court erred in finding no issue of material fact with respect to any essential element of Defendant-Appellee KPMG, LLP's ("KPMG's") professional exemption affirmative defense, 29 C.F.R. § 541.301, to Plaintiffs' Fair Labor Standards Act ("FLSA") claims, which KPMG bears the burden to prove, and which must be construed narrowly against KPMG, where Plaintiffs presented testimony and other evidence based on which a reasonable jury could find in their favor.

Whether the district court abused its discretion by denying Plaintiffs' timely and well-supported Fed. R. Civ. P. 56(d) motion to defer a summary judgment ruling and for leave to take additional discovery where only one stage of a two-stage discovery plan had been completed, Plaintiffs had been limited to

deposing only three of KPMG's hand-picked corporate witnesses, Plaintiffs had

obtained only KPMG's hand-picked corporate documents, and Plaintiffs had no

access to even a sample of discovery related to more than 1,300 opt-in plaintiffs.

## STATEMENT OF THE CASE

On January 19, 2011, Plaintiffs-Appellants Kyle Pippins and Jamie

Schindler filed a collective action complaint against KPMG in the U.S. District

Court for the Southern District of New York (Hon. Colleen J. McMahon, Judge)

alleging that KPMG failed to pay them and similarly situated Audit Associates

overtime compensation in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*  An

amended complaint filed on April 25, 2011 added Plaintiff-Appellant Lambert as a

named Plaintiff, as well as Fed. R. Civ. P. 23 class claims under N.Y. Labor Law

Art. 19 §§ 650 *et seq.* ("NYLL").  On November 30, 2012, Judge McMahon

granted summary judgment to KPMG, denied partial summary judgment to

Plaintiffs, and dismissed the NYLL claims without prejudice.  (*Pippins v. KPMG*,

No. 11 Civ. 0377, 2012 WL 6968332 (S.D.N.Y. Nov. 30, 2012) ("SJ Order"),

SPA__).

## STATEMENT OF FACTS

### I.    Introduction

Plaintiffs Kyle Pippins, Jamie Schindler, and Edward Lambert were Audit

Associates, the lowest level workers on KPMG's audit teams.  (Butler Tr. [JMS Ex.

A] 107:9-12, JA___).[1]  Their primary duty was to perform routine work for which little or no accounting background was required, including comparing numbers, populating spreadsheets, and counting inventory.  (Butler Tr. [JMS Ex. A] 410:24-411:13, JA___; Pippins Tr. [JMS Ex. E] 258:14-259:3, JA___; Lambert Tr. [JMS Ex. F] 198:3-12, JA___; Lambert Tr. [RMB Ex. NNN] 253:16-22, JA___).  They were closely supervised by more senior members of the audit team.  (Pippins Tr. [JMS Ex. E] 77:13-79:12, JA___; Lambert Tr. [RMB Ex. NNN] 105:10-106:6, JA___; Bradley Tr. [JMS Ex. OOO] 241:17-242:3, JA___).  As Plaintiff Lambert testified, his primary role was to collect facts and report them to others who made decisions based on them.  (Lambert Tr. [RMB Ex. NNN] 122:2-13, 194:25-195:10, JA___).

KPMG did not require Audit Associates to hold a professional license or any particular bachelor's degree.  (Butler Tr. [JMS Ex. A] 296:20-24, 298:14-23, 458:5-8, 461:3-12, JA___).

Notwithstanding their low-level jobs, KPMG classified Plaintiffs as exempt from the overtime requirements of the FLSA.  (Def.'s Resp. to Pls.' RFAs [RMB Ex. PPP] ¶51, JA___).  During the period at issue in this case, KPMG did not pay Plaintiffs any overtime compensation despite requiring them to work 50-60 hours

---

[1]     Citations with reference to "JMS Ex." are exhibits to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Summary Judgment, Dkt. No. 273.  Citations with reference to "RMB Ex." are exhibits to the Declaration of Rachel Bien in Opposition to Defendant's Motion for Summary Judgment, Dkt. No. 295.

per week or more.  (Schindler Tr. [JMS Ex. D] 292:13-18, JA__; Lambert Tr. [JMS

Ex. F] 266:8-17, JA__, Def.'s Resp. to Pls.' RFAs [RMB Ex. PPP] ¶¶51-59).  At

one time, however, KPMG did pay its low level audit team employees, who were

then called "assistant accountants" or "staff accountants," overtime compensation.

(Pfau Tr. [JMS Ex. C] 33:2-11, 61:25-62:7, 80:6-17, JA__; Reasons for

Elimination of O.T. [JMS Ex. UU], JA__; Titling FAQs [JMS Ex. VV], JA__).

KPMG stopped paying overtime compensation simply because its competitors did.

(*Id.*).

## II.    KPMG's Audit Practice

KPMG provides audit, tax and advisory services to clients throughout the

United States.  (Pls.' Counter-Statement of Material Facts ("Counter-Statement")

[Dkt. No. 300] ¶1, JA__).  The primary function of KPMG's Audit practice is to

perform financial statement audits.  (*Id.*, ¶2, JA__; Butler Tr. [JMS Ex. A] 28:13-

16, JA__).  Almost all audit work is performed "in the field," on client premises.

The end product of a financial statement audit is an auditor's report containing the

auditor's opinion.  (Butler Tr. [JMS Ex. A] 36:7-16, JA__).

## III.   Plaintiffs Were at the Bottom of the Audit Team Hierarchy.

KPMG assigns teams of employees to conduct client audits.  Some audit

teams have more than 100 members.  (Butler Tr. [JMS Ex. A] 67:3-9).  Audit Asso-

ciates are the lowest-level employees on a KPMG audit team, aside from the occa-

sional intern.  (*Id.* 107:9-12, JA__; Counter-Statement [Dkt. No. 300] ¶5, JA__). Engagement Partners are at the top of the hierarchy, and between them are generally three layers of supervision – Senior Managers, Managers, and Senior Associates. (Butler Tr. [JMS Ex. A] 24:8-16, JA__).

### A.    Partners Are the Decision-Makers on the Audit Team.

Every KPMG audit has an Engagement Partner who is responsible for the audit from before the client hires KPMG until the Auditor's Report is issued, and who is the decision-maker in all respects, especially with respect to planning the audit.  (*id.* 82:17–83:2, 80:4-18, 99:3-8, 108:10-109:2, 337:20-22, JA__; Walsh Tr. [JMS Ex. B] 77:12–23, JA__; Def.'s Resp. to Pls.' RFAs [RMB Ex. PPP] ¶¶19, 22-23, JA__;  Audit Workbook: Engagement Management [JMS Ex. Q], JA__).  Only the partner can commit KPMG to an auditor's report, which expresses an opinion about whether a client's financial statements conform with Generally Accepted Accounting Principles ("GAAP").  (Butler Tr. [JMS Ex. A] 337:20-22, 338:4-12; JA__).

### B.    Managers Supervise the Execution of the Audit Plan.

Below Partners are Senior Managers and Managers, the lowest-level audit team members who must have CPA licenses.  (*Id.* 635:13-636:7, JA__; Counter-Statement [Dkt. No. 300] ¶36, JA__).  Managers are responsible for creating the plan for the audit.  (Goal Statements: Managers [JMS Ex. T], JA__).  Managers en-

sure that the audit team carries out the audit plan appropriately.  (Audit Workbook: Engagement Management [JMS Ex. Q], JA__; Butler Tr. [JMS Ex. A] 375:2-12, JA__).  Managers are often present in the field to supervise the work.  (Butler Tr. [JMS Ex. A] 412:24-413:18, 414:2-6, JA__).  Managers keep the Partner informed on the engagement's progress, resolve issues with team members, and generally supervise and direct the engagement team.  (Audit Workbook: Engagement Management [JMS Ex. Q], JA__).  Managers must review all work papers that junior members of the audit team assemble.  (*Id.*, JA__; Butler Tr. [JMS Ex. A] 380:20-381:10, JA__).

### C.    Senior Associates Are the Audit Team Forepeople.

Senior Associates' primary duty is to execute audit procedures.  (Audit Workbook: Engagement Management [JMS Ex. Q], JA__).  They are expected to perform tasks assigned to them, prepare work papers, and inform the Manager of issues or problems.  (*Id.*, JA__).  Senior Associates also supervise and train Audit Associates, including walking them through their assigned procedures.  (Butler Tr. [JMS Ex. A] 398:19-22, 472:4-19, 743:11-744:11; 747:23-748:22, 751:8-23; 755:12-18; JA__).

### D.    Plaintiffs Were Entry-Level Audit Team Members.

The Audit Associate job is an entry-level job.  (Counter-Statement [Dkt. No. 300] ¶5, JA__).  Audit Associates are typically in that role for two years before

being promoted to Senior Associate.  (Butler Tr. [JMS Ex. A] 478:23-479:2, JA__).

Audit Associates do not need a CPA license to perform their duties.  (*Id.* 298:14–

23, JA__).  An Audit Associate does not have to be eligible for the CPA exam in

order to be hired at KPMG.  (*Id.* 458:5-8, 461:3-12, JA__).  KPMG requires Audit

Associates to have a bachelor's degree (*id.*), but not necessarily a degree in

business or accounting or any other specific academic area.  (*Id.* 296:20-24, JA__).

KPMG regularly hires Audit Associates who have taken eight or fewer accounting

classes (Butler Tr. [JMS Ex. A] 325:7-14, JA__), and does not require applicants to

have taken an auditing course.  (*Id.* 461:3-18).

Audit Associates perform the lowest-level tasks on the audit team.  (Butler

Tr. [JMS Ex. A] 107:9-12, JA__; Counter-Statement [Dkt. No. 300] ¶5, JA__).

KPMG describes Audit Associates' duties as "front-line audit fieldwork."

(Counter-Statement [Dkt. No. 300] ¶51, JA__).  Plaintiffs Lambert and Pippins

testified that they executed specific audit procedures and tasks that more senior

team members assigned to him.  ((Pippins Tr. [RMB Ex. LLL] 92:5-7, 131:19-

132:3, 150:11-23, 152:4-23, 153:8-15, 154:17-155:2, 167:19-168:22; JA__;

Lambert Tr. [RMB Ex. NNN] 107:7-14, 116:16-18, 122:2-13, JA__).  Plaintiff

Schindler testified that she performed tasks that the "senior told [her] to do"

(Schindler Tr. [RMB Ex. KKK] 225:18-225, JA__), and that she did not make

adjustments to procedures unless she was told to do so.  (*Id.* 262:8-12, JA__).  The

steps that Audit Associates must follow are set forth in KPMG procedures.
(KPMG Professional Judgment Framework [JMS Ex. N], JA __; Butler Tr. [JMS
Ex. A] 512:10-513:22, JA __) (*see also* Pippins Decl. [Dkt. No. 35-1] ¶18, JA__;
Schindler Decl. [Dkt. No. 35-2] ¶18, JA__; Bradley Decl. [Dkt. No. 35-3] ¶18,
JA__; Lambert Decl. [Dkt. No. 35-4] ¶18, JA__; Young Decl. [Dkt. No. 35-5] ¶18,
JA__).

During the planning stage of an audit, senior engagement team members
make all significant audit planning decisions. This includes all determinations re-
garding "key factors, key relationships and other considerations that drive the
business," "assessment of RoSM [the risk of significant misstatement]," "expecta-
tions," and "appropriate sampling technique[s]." (Audit Workbook: Planning
[JMS Ex. J], JA__; Planning Overview [JMS Ex. K], JA__; Butler Tr. [JMS Ex. A]
143:22-144:17, 145:12-15, 146:17-23, 149:15, 223:18-224:1, JA__). This also in-
cludes determinations regarding the potential for fraud by management. (Butler
Tr. [JMS Ex. A] 143:22-144:17; 146:17-23, 149:15; 223:18-224:1, JA__; Audit
Workbook: Planning [JMS Ex. J], JA__; Planning Overview [JMS Ex. K], JA__).

## IV. Audit Associates Learn How to Perform Their Work Through KPMG Training and On the Job.

Audit Associates learn to execute their audit tasks through formal KPMG
training and on the job training by more senior audit team members. KPMG train-
ing does not require pre-existing advanced accounting knowledge. (Walsh Tr.

8

[JMS Ex. B] 20:18-24, 158:9-21, JA__; Pippins Decl. ¶¶28-29, JA__; Schindler Decl. ¶¶27-28, JA__; Bradley Decl. ¶¶28-29, JA__; Lambert Decl. ¶¶27-28, JA__; Young Decl. ¶¶27-28, JA__).  KPMG requires all new Audit Associates to take a training entitled "Audit Fundamentals" soon after they are hired.  (*Id.* 122:16-22, JA __; Walsh Tr. [JMS Ex. B] 13:1-5, JA__).  Audit Fundamentals teaches new Audit Associates KPMG's audit methodology and the procedures they are likely to perform during their first year.  (Walsh Tr. [JMS Ex. B]19:12-22, 20:18-21, 66:9-11, 70:25-71:4, 78:9-16, 81:13-16, 84:12-17, 93:16-22, 324:6-10, JA__).

KPMG teaches the most basic audit concepts during Audit Fundamentals (*id.* 17:23-25, 18:1-6, 151:11-16), including what an audit is, the importance of financial statements, why companies undertake audits, what the acronym GAAP stands for, and what audit documentation is, among others.  (*Id.* 150:17-24, 160:7-11, 203:18-25; What Is an Audit? [JMS Ex. V], JA__; Audit Documentation [JMS Ex. HH], JA__).

What Plaintiffs did not learn from KPMG's training program, they learned on the job, in the field.  Senior Associates provide on-the-job training to Audit Associates, including helping them understand the purpose of the procedures they are assigned.  (Butler Tr. [JMS Ex. A] 472:4-8, JA__).  Senior Associates walk Audit Associates through the execution of the procedures they perform.  (*Id.* 398:19-22, 472:4-8, 472:9-14, 472:15-19, JA __; Young Tr. II 69:16-20, 76:12-14

[JMS Ex. I], JA __).  Plaintiffs' tasks required only general understanding of the relevant procedures , which they learned on the job.  (Pippins Decl. ¶12, JA__; Schindler Decl. ¶12, JA__; Bradley Decl. [Dkt. No. 35-3] ¶12, JA__; Lambert Decl. ¶12, JA__; Young Decl. ¶12, JA__).  KPMG's on-the-job training teaches Audit Associates what they do and why they do it.  (Butler Tr. [JMS Ex. A] 473:14-22, JA__).  Plaintiff Schindler testified that she learned how to perform the tasks she was assigned while "on-the-job."  (Schindler Tr. [Ex. KKK] 225:18-226:2, JA__).

Plaintiffs' day-to-day duties did not require them to call upon knowledge they gained through formal academic education.  For example, Plaintiff Pippins testified that in performing his most common duties, such as inventory counts, he could not recall having to apply any of the accounting knowledge he acquired during college in his work at KPMG.  (Pippins Tr. [JMS Ex. E] 80:3-12, JA__; Pippins Tr. [RMB Ex. LLL] 170:15-171:16, 173:19-174:15, JA__).  Plaintiff Bradley testified that "the problem" with the Audit Associate job was that, despite having "all of this education," he did "not apply[] it to his duties at KPMG" because his "tasks did not require" it (Bradley Tr. [JMS Ex. G] 111:20-112:3, 114:10-14, 164:5-23, 223:5-22; JA__), and that his work did not require him to know GAAP.  (Bradley Tr. [RMB Ex. OOO] 157:22-158:2, 159:7-12, JA__).  Plaintiff Schindler testified that she did not need to use her substantive knowledge

of auditing and accounting to complete her assignments.  (Schindler Tr. [JMS Ex. D] 214:19-215:2, JA__).

## V. Audit Associates' Primary Duty is to Perform Routine Tasks.

As entry-level workers, Plaintiffs performed routine tasks.  (Schindler Tr. [RMB Ex. KKK] 263:3-9, JA__; Pippins Decl. ¶20, JA__; Schindler Decl. ¶20, JA__; Bradley Decl. ¶20, JA__; Lambert Decl. ¶20, JA__; Young Decl. ¶20, JA__).  Much of their work involved simply matching numbers in documents to numbers in other documents; comparing figures in clients' invoices with figures in clients' financial statements; inputting numbers into spreadsheets and templates; and taking detailed notes of conversations with clients.  (Butler Tr. [JMS Ex. A] 407:8-408:20, 409:21-410:19, 698:11-700:20, JA__; Pippins Tr. [JMS Ex. E] 172:14-173:3, 258:14-259:3, JA__; Lambert Tr. [JMS Ex. F] 198:3-12, JA__; Bradley Tr. [JMS Ex. G] 98:11-18, JA__; Young Tr. [JMS Ex. H] 229:25-230:4, 258:3-5, JA__; Lambert Tr. [RMB Ex. NNN] 210:19-24, 211:6-12, 212:24-213:5, JA__; Schindler Tr. [RMB Ex. KKK] 169:20-170:7, 172:14-25, 181:9-183:2, JA__; Pippins Tr. [RMB Ex. LLL] 258:14-259:3, JA__; Audit Workbook: Engagement Management [JMS Ex. Q], JA__ ).  Plaintiff Pippins described performing "substantive procedures" as "taking a template that was created by KPMG and populating numbers."  (Pippins Tr. [RMB Ex. LLL] 39:15-18, 112:8-19, JA__).

Plaintiff Lambert described his work on a balance sheet as typing information into a spreadsheet.  (Lambert Tr. [RMB Ex. NNN] 253:16-22, JA__).

Most of the tasks that Audit Associates perform are set out for them in pre-determined steps that they must complete to gather audit evidence.  (KPMG Professional Judgment Framework [JMS Ex. N], JA __; Butler Tr. [JMS Ex. A] 512:10-513:22, JA__).  The steps are summarized in an audit plan, which lists the procedures that the audit team carries out on the audit.  (Butler Tr. [JMS Ex. A] 268:5-17, JA__).

KPMG also provides Audit Associates with "eAudit," a computer program that walks Audit Associates through the audit steps that must be completed for each area of an audit and provides guidance on the steps.  (*Id.* 618:17-20, 619:25-620:20, JA__; Walsh Tr. [JMS Ex. B] 41:13-24, 42:7-9, 42:14-17, 43:5-7, JA__).

After Plaintiffs performed the tasks assigned to them, they summarized the steps they took and brought discrepancies to the attention of more senior team members.  (Schindler Tr. [RMB Ex. KKK] 248:10-18, JA__; Lambert Tr. [RMB Ex. NNN] 107:7-14, 116:19-117:2, 121:9-21, 122:2-13, 194:25-195:10, JA__; Bradley Tr. [RMB. Ex. OOO] 218:11-219:4, JA__).  They recorded each step they performed, and the information they obtained, so that more senior team members knew what had been done.   (Schindler Tr. [RMB Ex. KKK] 210:19-211:13, JA__).

The following are some of the most common audit tasks that Audit Associates perform:

### 1.    Inventory Observations

Inventory observations involve the physical count of inventory, comparing the results with the client's records, observing whether inventory has been received or removed during the inventory count, and obtaining the client's records to see whether the inventory was accurately counted.  (Butler Tr. [JMS Ex. A] 404:17-405:17, 407:8-408:20, 408:21-409:2, 409:1-410:19, 410:24-411:13, 412:5-8, JA__; Walsh Tr. [JMS Ex. B] 19:12-17, JA__; Schindler Tr. [RMB Ex. KKK] 263:3-9, JA__; Pippins Decl. ¶15, JA__; Schindler Decl. ¶15, JA__; Bradley Decl. ¶15, JA__; Lambert Decl. ¶15, JA__; Young Decl. ¶15, JA__ ).  Plaintiff Pippins simply used his "common sense" in conducting inventory observations by observing whether any of the inventory that he was told to look for was missing.  (Pippins Tr. [JMS Ex. LLL] 173:19-174:15, JA__).

### 2.    Walkthroughs

During walkthroughs, Audit Associates asks a client's employees to demonstrate the steps the client takes to ensure accuracy in financial reporting. The Audit Associate takes notes on what the client explains.  (Lambert Tr. [RMB Ex. NNN] 132:12-24, 133:2-6, JA__).  Audit Associates (1) obtain the client's documentation; (2) ask the client's personnel to report what they do to carry out

13

their controls; (3) compare what the client's personnel says to what their documentation says; (4) ask the client's personnel about any discrepancies; and (5) document the steps they took in work papers.   (Butler Tr. [JMS Ex. A] 698:11-700:20, JA__).

### 3.    Work Papers

Audit Associates also prepare work papers which document the audit steps. KPMG provides Audit Associates with a "WorkPaper Review Checklist" to help them complete their work.  (Communications [Ex. II], JA__).  Plaintiffs Pippins and Bradley followed KPMG's work paper templates to document their audit pro-cedures.  (Template Working Paper [Ex. MM], JA__; Pippins Tr. [RMB Ex. LLL] 112:8-19, 171:23-173:3, JA__; Bradley Tr. [RMB Ex. OOO] 31:21-32:5, 218:11-219:4, JA__).  Plaintiffs Bradley and Lambert were told what to put in working papers by more senior team members.  (Lambert Tr. [JMS Ex. F] 232:8-233:5, JA__; Bradley Tr. [JMS Ex. G]106:2-14, JA__).  Plaintiffs Lambert and Schindler relied on the prior year's working papers, which contained the steps they were ex-pected to perform to execute their assigned tasks.  (Schindler Tr. [RMB Ex. KKK] 181:9-183:2, JA__; Lambert Tr. [RMB Ex. NNN] 148:15-25, JA__).  Plaintiffs Bradley, Lambert, and Schindler all testified that their duties with respect to work papers involved "rolling" previous years' working papers "forward" by updating them with data from the current year.  (Schindler Tr. [RMB Ex. KKK] 187:25-

14

189:11, JA__; Lambert Tr. [RMB Ex. NNN] 148:15-149:4, JA__; Bradley Tr.

[RMB Ex. OOO] 49:14-50:8, 58:24-59:9, 81:12-25, 82:2-11, JA__).

Senior Associates review Audit Associates' work papers and take ownership

of the work papers that they review. (Goal Statements: Audit Associate [JMS Ex.

S]). Managers are ultimately responsible for reviewing all work papers. (Butler

Tr. [JMS Ex. A] 252:25-253:7, JA__; Goal Statements: Manager [JMS Ex. T],

JA__). Plaintiffs did not determine whether sufficient data was obtained to support

the reasonableness of the conclusions reached by the audit team or make an as-

sessment as to whether the data reflected in the work papers supported the conclu-

sion in the work paper. (Pippins Tr. [JMS Ex. LLL] 130:16-19, 131:19-132:3,

JA__; Lambert Tr. [RMB Ex. NNN] 194:25-195:10, JA__; Bradley Tr. [JMS EX.

OOO] 218:4-10, 218:21-219:4, JA__).

### 4.    Other Routine, Non-Judgmental Tasks

Audit Associates frequently perform tasks that KPMG has labeled "non-

judgmental" including confirmations, reconciliations, recalculations, and certain

procedures regarding financial statements. (Audit Fundamentals: GDC [JMS Ex.

Y], JA__; Butler Tr. [JMS Ex. A] 514:7-24, JA__; Walsh Tr. [JMS Ex. B] 256:24-

260:7, 343:24-344:10), JA__). Plaintiffs also frequently performed a variety of

clerical and administrative tasks, such as making copies, stuffing envelopes,

compiling binders, organizing documents, and faxing documents. (Schindler Tr.

[JMS Ex. D] 231:15-232:5, JA__; Pippins Tr. [JMS Ex. E] 64:12-19, 76:5-18, JA__; Bradley Tr. [JMS Ex. G] 81:20-25; 84:3-85:5, 231:4–14, JA__; Young Tr. [JMS Ex. H] 116:8-13, 244:3-6, JA__; Pippins Decl. ¶¶13, 16, JA__; Schindler Decl. ¶¶13, 16 , JA__; Bradley Decl. ¶¶13, 16, JA__; Lambert Decl. ¶¶13, 16, JA__; Young Decl. ¶¶13, 16, JA__).

## VI.  "Professional Skepticism" and "Due Professional Care" Require Audit Associates to Be Careful and Detail-Oriented.

In performing audits, KPMG must comply with certain professional audit standards.  (Counter-Statement [Dkt. No. 300] ¶¶ 7, 16-17, JA__).  These standards require KPMG to ensure that members of an audit team use "due professional care" and "professional skepticism" in performing their duties.  (Butler Decl., Dkt. No. 268, ¶¶18-19; AU §§ 150.02, 230.02, 230.07).  According to KPMG's witnesses and corporate documents, for Audit Associates, "due professional care" means understanding the purpose of the audit procedure that they are assigned to execute and following the procedure correctly and carefully (Walsh Tr. [JMS Ex. B] 165:8-10).  Exercising "professional skepticism" means maintaining an objective state of mind, and having a questioning mind about every audit activity that is performed during an audit.  (Counter-Statement [Dkt. No. 300] ¶59(a), JA__; Walsh Tr. [JMS Ex. B] 109:21-23, JA__; Professional Judgment [JMS Ex. N], JA__).

16

Plaintiffs understood professional skepticism to mean bringing any errors to the attention of more senior team members, taking care in performing their work (Lambert Tr. [RMB Ex. NNN]106:20-107:6, 116:5-11), being professional in communications (*id.* 31:17-21), asking questions and not doing something "mindlessly" (Young Tr. [RMB Ex. MMM] 137:10-15), and acting in a "conservative and ethical" manner (*id.* 85:18-25).  According to KPMG, Audit Associates exercise "professional skepticism" simply by noting an inconsistency in an inventory count.  (Butler Tr. [JMS Ex. A] 522:12-523:5).

Even seemingly more complex tasks like "testing operating effectiveness" and "performing substantive procedures," involved guides and templates.  (Pippins Tr. [RMB Ex. LLL] 39:15-18, 112:8-19, JA__; Bradley Tr. [RMB Ex. OOO] 31:21-32:5, JA__).  "Expense analytics" meant comparing previous data to current data and providing information to senior team members.  (Lambert Tr. [RMB Ex. NNN] 212:24-213:5, JA__).  "Testing internal controls" involved obtaining a list of the client's controls and redoing the steps.  (Schindler Tr. [RMB Ex. KKK] 169:20-170:7, JA__).

Plaintiffs' primary duty also did not include more discretionary tasks such as designing or determining procedures, deciding what methods to use, making decisions relating to tests, or determining materiality.  (Butler Tr. [JMS Ex. A] 339:18-23, 344:21-345:20, 349:8-14, JA__; Substantive Testing [JMS Ex. CC],

17

JA__; Testing Controls [JMS Ex. DD],  JA __; Design and Implementation [JMS Ex. EE], JA __).

## VII.  Audit Associates Are Closely Supervised.

Plaintiffs were closely supervised in performing their audit tasks.  (Pippins Tr. [JMS Ex. E] 77:13-79:12, JA__; Lambert Tr. [RMB Ex. NNN] 105:10-106:6, JA__; Bradley Tr. [JMS Ex. OOO] 241:17-242:3, JA__; Schindler Decl. ¶¶11, 20, JA__; Young Decl. ¶¶11, 20, JA__).  Professional standards require KPMG to closely supervise Audit Associates and carefully review their work.  (Butler Tr. [JMS Ex. A] 381:20-22, 468:18-469:3, 471:7-19, JA__; Walsh Tr. [JMS Ex. B] 120:19-24, JA__).  KPMG supervises Audit Associates throughout audit engagements, from the assignment of the work through the completion of the work.  (Butler Tr. [JMS Ex. A] 471:7-19, JA__).  Team members senior to Audit Associates review their work, analyze it, and draw conclusions from it regarding the overall audit.  (Walsh Tr. [JMS Ex. B] 119:21-120:3, JA__; Butler Tr. [JMS Ex. A] 40:21-24, 41:24-45:12, 337:20-22, JA__; Lambert Tr. [JMS Ex. F] 232:8-233:5, JA__; Bradley Tr. [JMS Ex. G] 106:2-14, JA__; Audit Workbook: Engagement Management [JMS Ex. Q], JA__; Bradley Tr. [JMS Ex. OOO] 218:4-10, JA__).

Senior Associates monitor Audit Associates' work, and tell Audit Associates what procedures to perform and how to execute the audit program steps they are assigned.  (Butler Tr. [JMS Ex. A] 398:19-22, 472:9-19, JA__; Young Tr. II [JMS

Ex. I] 69:16-20,76:12-14, JA__).  KPMG's training materials instruct Audit

Associates to consult with more senior team members "if evidence obtained is

conflicting, key evidence is not available, [they] lack experience or expertise in a

subject matter, [they] don't understand why a procedure is being performed, or

something just does not 'feel right'."  (Audit Quality [JMS Ex. GG], JA__).

Plaintiffs were instructed to raise any concerns, mistakes, exceptions, or issues

with more senior team members and not to take it upon themselves to fix anything

on their own.  (Lambert Tr. [JMS Ex. F] 116:19-117:2, 122:2-13, JA__; Bradley Tr.

[JMS Ex. G] 72:9-14, 72:18-73:5, JA__;  Lambert Tr. [RMB Ex. NNN] 105:10-

106:6, JA__; Bradley Tr. [JMS Ex. OOO] 241:17-242:3, JA__).  Plaintiff Lambert

testified that his role was to collect and report facts and communicate them to

others who make decisions based on them.  (Lambert Tr. [RMB Ex. NNN] 122:2-

13, 194:25-195:10, JA__).  According to KPMG's Engagement Review Goals,

Senior Associates are expected to propose solutions to issues that come up during

the course of engagements (Engagement Review Goals: Senior [JMS Ex. P] ¶4,

JA__); Audit Associates do not have this responsibility (Engagement Review

Goals: Associate [JMS Ex. O] ¶4, JA__).

## VIII.  Procedural History

Plaintiffs Kyle Pippins and Jamie Schindler filed this lawsuit on January 19,

2011, bringing collective action claims under the Fair Labor Standards Act

("FLSA").  (Dkt. No. 1).  On April 25, 2011, Plaintiffs amended their complaint,

adding Edward Lambert as a Plaintiff and class claims under the NYLL.  (Dkt. No.

51).  KPMG answered Plaintiffs' First Amended Complaint on February 17, 2012.

(Dkt. No. 140).  On April 6, 2011, Plaintiffs moved for Conditional Certification

and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.  (Dkt. No.

33).  On January 3, 2012, the district court granted Plaintiffs' motion.  (*Pippins v.*

*KPMG LLP*, No. 11 Civ. 377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012), JA__)

("216(b) Order").

     In the 216(b) Order, the district court set forth a unique, two-phase discovery

process.  The court ordered an initial "expedited" phase of discovery "relating to

the issue of why all Audit Associates are classified as exempt, without regard to

their personal situations . . . with an eye to having someone (probably Plaintiffs)

move for summary judgment no later than April 27, 2012."  (*Id.*, p. 27, JA __).

The second phase was to cover "on the ground" lower-level discovery—including

discovery related to Plaintiffs' and opt-ins' actual job duties.  (*Id.*, 26-27, JA__;

Stipulation re: Discovery Matters ("Stipulation") [Dkt. No. 226] pp. 1-2, JA__).

     During the initial discovery phase, the district court only allowed depositions

of the corporate-level witnesses KPMG intended to call at trial, all three of whom

were selected by KPMG.  (Swartz Decl. [Dkt. No. 290] ¶20, JA__; March 2, 2012

Conf. Tr. [Dkt. No. 154] 25:16-17, JA__).  Discovery of documents from a sample

of opt-in plaintiffs that would illustrate their actual job duties, including personnel files, performance reviews, emails discussing work assignments and job duties, and time records, was also deferred (Swartz Decl. [Dkt. No. 290], ¶¶14, 16, JA__), as was production of a sample of Audit Associate computer hard drives.  (*Id.* ¶18, JA__).

After the initial phase of discovery KPMG moved for summary judgment, arguing that all Audit Associates were exempt under the professional exemption to the FLSA.  Plaintiffs moved for class certification of the NYLL class and for partial summary judgment on behalf of first-year Audit Associates with respect to several discrete elements of the administrative and professional exemptions.

Plaintiffs responded to KPMG's summary judgment motion and, because discovery was not yet complete and Plaintiffs did not have all of the discovery they needed to present an opposition to KPMG's motion, Plaintiffs filed a Motion for Discovery in the Alternative under Fed. R. Civ. P. 56(d) ("Rule 56(d)"), asking that the district court delay a ruling on KPMG's summary judgment motion until Plaintiffs were able to complete discovery.  (Pls.' Mem. Of Law in Supp. of Rule 56(d) Mot., Dkt. No. 289).

In support of their Rule 56(d) motion, Plaintiffs submitted a detailed declaration setting forth the categories of discovery that they had been denied and that they should be entitled to obtain before the district court could properly grant

summary judgment in KPMG's favor.  (Swartz Decl. [Dkt. No. 290], JA__).

On October 10, 2012, almost two months before it ruled on KPMG's summary judgment motion, the district court denied the Plaintiffs' Rule 56(d) motion with a handwritten order:  "Denied, without prejudice.  There will be plenty of opportunity for discovery if the summary judgment motions are inconclusive."  (Order Denying Rule 56(d) Motion ("Rule 56(d) Order") [Dkt. No. 345], SPA __).

On November 30, 2012, the district court granted KPMG's summary judgment motion and denied Plaintiffs' partial summary judgment motion.  Among other things, the district court found that "[s]imply deciding whether an issue warrants the attention of a more senior member of the team indicates an exercise of discretion and judgment."  (SJ Order [Dkt. No.  349], p. 46, SPA__).  It also acknowledged that "Audit Associates undoubtedly spend a great deal of time doing things that are tedious and unglamorous, like comparing numbers or inputting numbers into a spreadsheet," but nonetheless concluded that "the work they do is vital to the process" and "the fact that the work is tedious and unglamorous does not make it . . . unprofessional."  (*id.*, p. 47, SPA__).

The district court did not consider whether the administrative exemption applied.  (SJ Order, p. 2, SPA__).  It declined to rule on Plaintiffs' motion for class certification and dismissed the NYLL claims without prejudice.  *Id.*

## SUMMARY OF THE ARGUMENT

The district court granted KPMG's motion for summary judgment, dismissing the claims of Plaintiffs and more than 1300 other Audit Associates because it held that they were exempt under the "learned professional exemption," an affirmative defense to the FLSA's overtime protections. 29 C.F.R. § 541.30. The Court should reverse because a reasonable jury could find in Plaintiffs' favor on several of the required elements of the professional exemption, each of which KPMG has the burden to prove. If, however, the Court determines that Plaintiffs have not presented enough evidence to create a factual dispute on at least one of the required elements of the professional exemption, it should reverse and remand to allow the parties to complete the second phase of the two-phase discovery process that the district court put in place.

### *A Jury Should Have Decided the Exemption Question*

KPMG did not meet its burden to prove two of the three elements of the professional exemption beyond a reasonable dispute. In granting KPMG's motion, the district court strayed from well-established summary judgment principles by weighing the evidence, resolving factual disputes, and drawing inferences in favor of KPMG, the moving party. It also failed to place the burden to prove each element of the professional exemption on KPMG. The district court should have

denied KPMG's motion because Plaintiffs presented evidence that supported a finding in their favor on the first and third prongs of the professional exemption.

### *Work Requiring Advanced Knowledge*

Plaintiffs presented evidence that their primary duty (their "principal, main, major or most important duty," 29 C.F.R. § 541.700(a)) was not work "requiring advanced knowledge," the first requirement of the professional exemption. 29 C.F.R. § 541.700(a)(1).

*First*, the district court erred by focusing on KPMG's hiring criteria and overlooking Plaintiffs' actual job duties when analyzing this requirement. Courts must base their analysis on an employee's actual job duties, not "an individual employer's specified hiring preferences." U.S. Dep't of Labor Opinion Letter, 2006 WL 2792440, at *2 (July 24, 2006).

*Second,* the district court did not credit Plaintiffs' evidence that, even if Plaintiffs had "advanced knowledge," their Audit Associate work did not "*require*" them to use it. Plaintiffs testified unequivocally that any accounting principles that they learned in college had little or nothing to do with their actual day-to-day audit tasks.

*Third,* KPMG did not prove that Plaintiffs' work met the two-pronged definition of "work requiring advanced knowledge." Plaintiffs' work was not (1) "predominantly intellectual in character" and did not require (2) "the consistent

24

exercise of discretion and judgment." 29 C.F.R. 541.301(b). Plaintiffs presented evidence that their most important responsibilities were to perform mechanical, routine tasks that others assigned to them. *See* 29 C.F.R. § 541.301(b).

The district court made no finding that Plaintiffs' work was "predominantly intellectual in character." It simply relied on its view that Plaintiffs' duties "involve performing tasks that are associated with performing audits." (SJ Order, p. 33, SPA__). However, employees in the accounting industry "who normally perform a great deal of routine work generally will not qualify as exempt professionals." 29 C.F.R. § 541.301(e)(5).

The district court also erred in finding that that Plaintiffs "consistent[ly] exercise[ed] . . . discretion and judgment," 29 C.F.R. § 541.301(b). Its first mistake was to reject the only available definition of "discretion" and "judgment" in the FLSA which is found in the administrative exemption, 29 C.F.R. § 541.202, and fashion a new standard so low that almost any work in any occupation would meet it. (SJ Order, pp. 34-36, 46-47, JA__). More importantly, it failed to credit Plaintiffs' evidence that they hardly exercised discretion and judgment at all, much less consistently.

*Prolonged Course of Specialized Intellectual Instruction*

Plaintiffs' primary duty also did not meet the third prong of the professional exemption, that any advanced knowledge that the job required "must be

25

customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a)(3).  KPMG did not require newly hired Audit Associates to have any particular academic degrees or to be eligible to take the CPA exam.  In addition, Plaintiffs presented evidence that Audit Associates learned how to perform their audit tasks through KPMG's training and on the job, not from their academic studies.

### *The Summary Judgment Decision Was Premature*

The district court should have allowed Plaintiffs to complete discovery before ruling on KPMG's summary judgment motion.   The district court denied Plaintiffs' motion for further discovery under Fed. R. Civ. P. 56(d) even though much of the discovery Plaintiffs sought had been deferred until the second of two discovery phases.  Plaintiffs only had access to three corporate witnesses that KPMG hand-picked and had not yet been allowed to take discovery related to their own employment or the employment of even a sampling of the over 1300 other opt-ins whose claims are now extinguished.  As a result, the district court ruled largely based on KPMG's version of events, and with very little information on what Audit Associates did on a day to day basis.

## ARGUMENT

**I.    KPMG Did Not Meet Its Burden to Prove Each Element of the FLSA's Professional Exemption.**

The district court erred by granting KPMG's motion for summary judgment because KPMG did not meet its burden to prove that Plaintiffs' primary duty falls under the FLSA's professional exemption.  This Court reviews "*de novo* a district court's grant or denial of summary judgment, viewing the record in the light most favorable to the party against whom summary judgment is sought."  *Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1744 (2012) (internal quotation marks and citation omitted).   A grant of summary judgment "may properly be affirmed[] only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).  In considering a summary judgment motion, a court may not "weigh the evidence" or "determine the truth of the matter[,]" as "'the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 255 (1986)).

The FLSA requires employers to pay employees one-and-one-half times their regular hourly rates for all hours worked in excess of 40 per week unless certain narrowly construed exemptions apply.  29 U.S.C. § 207(a).  KPMG claims

that the FLSA's professional exemption, 29 C.F.R. § 541.301, applies here.[2]

Because FLSA exemptions are affirmative defenses, KPMG bore the burden of proving that it is entitled to rely on the professional exemption. *See Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991). Because the FLSA is a "remedial law," its exemptions are "narrowly construed against the employers seeking to assert them and their application limited to [employees] plainly and unmistakably within their terms and spirit." *In re Novartis Wage and Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010), *abrogated on other grounds by Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012).

To be an exempt professional, an employee's "primary duty" (the "principal, main, major or most important duty that the employee performs," 29 C.F.R. § 541.700(a)) must be the performance of work (1) "requiring advanced knowledge," (2) "in a field of science or learning," (3) that is "customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a). The professional exemption does not apply to employees who may have "professional training [and] who are working in professional fields, but whose primary duty consists of the performance of sub-professional or routine work." U.S. Dep't of Labor Opinion Letter, 1999 WL 33210909, at *1 (Nov. 2, 1999).

_____

[2] KPMG also asserted that Plaintiffs were exempt administrators. (Answer to First Am. Compl., Dkt. No. 140, p. 15). Plaintiffs moved for summary judgment on this defense but the district court did not consider Plaintiffs' motion because it found that Plaintiffs were exempt professionals. (SJ Order, p. 2, SPA__).

KPMG must prove each element of the professional exemption to prevail. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004) ("the employer bears not only the burden of proof [on FLSA exemption defenses], but also the burden on each element of the claimed exemption."). Where, as here, the party moving for summary judgment bore the burden of proof, "it must establish that there is no genuine issue of material fact to be decided regarding *any essential element* of that party's claim." *Lazoda v. Maggy*, 900 F. Supp. 596, 601 (N.D.N.Y. 1995) (citing *Celotex Corp.*, 477 U.S. at 322) (emphasis added). "[I]f the party opposing summary judgment *generates uncertainty* as to the true state of any material fact" summary judgment is inappropriate. *Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir. 1989) (emphasis added) (internal quotation marks and citation omitted). Accordingly, it is "difficult" for the party that bears the burden of proof to prevail on summary judgment. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Plaintiffs did not need to conclusively negate any element of KPMG's claim in order to avoid summary judgment, they only needed to show that any element "may reasonably be decided in favor of either party." *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citation omitted).

The district court erred by granting KPMG's summary judgment motion because a jury could reasonably decide in Plaintiffs' favor on the first and third

elements of the professional exemption.  Plaintiffs' primary duty at KPMG did not

require advanced knowledge (first prong) that was acquired by a prolonged course

of specialized intellectual instruction (third prong).  *See* 29 C.F.R. §541.301(a)(1),

(3).

### A.    Plaintiffs' Primary Duty Did Not Require "Advanced Knowledge."

The district court erred by making the factual determination that Plaintiffs'

work "requir[ed] advanced knowledge," 29 C.F.R. § 541.700(a)(1), instead of

allowing a jury to resolve this issue.

### 1.    The District Court Should Not Have Ignored Plaintiffs' Actual Job Duties in Determining Whether Plaintiffs' Primary Duty Required Advanced Knowledge.

The district court was wrong to rely on KPMG's hiring criteria and overlook

Plaintiffs' actual job duties when it determined that the Audit Associate position

required advanced knowledge.  The district court held that Plaintiffs' primary duty

required advanced knowledge simply because KPMG "*restricts entry into the job*

*of Audit Associate to individuals who have taken at least enough specialized*

*academic coursework to satisfy state standards for the CPA examination.*"  (SJ

Order, p. 32, SPA__) (emphasis added).

However, courts must base their analysis on an employee's actual job duties,

not "an individual employer's specified hiring preferences."  U.S. Dep't of Labor

Opinion Letter, 2006 WL 2792440, at *2 (July 24, 2006).  In applying the FLSA

exemptions, courts should analyze an employee's "actual duties" at work.  *Myers v. Hertz Corp.*, 624 F.3d 537, 550 (2d Cir. 2010) (citing 29 C.F.R. § 541.2).  The professional exemption does not apply to employees who may have "professional training [and] who are working in professional fields, but whose primary duty consists of the performance of sub-professional or routine work."  U.S. Dep't of Labor Opinion Letter, 1999 WL 33210909, at *1 (Nov. 2, 1999).

The Department of Labor has consistently stated that an individual "may work in 'a field of science or learning' but still not meet the requirements for the learned professional exemption" because of the nature of the individual's job.  U.S. Dep't of Labor Opinion Letter, 2006 WL 2792440, at *2 (July 24, 2006).  The professional exemption itself explains that even employees in the accounting industry "who normally perform a great deal of routine work generally will not qualify as exempt professionals."  29 C.F.R. § 541.301(e)(5).

The proper inquiry is whether advanced knowledge is required *in order to do the job*, not whether the employer requires a person to have advanced knowledge *in order to be hired*, or whether the employee happens to have acquired a certain level of education.  "[I]t is analytically incorrect to 'work backwards' from the level of an employee's knowledge and skill in order to infer that the occupation requires the kind of advanced academic instruction contemplated by the regulations."  *Pignataro v. Port Auth. of N.Y. & N.J.,* 593 F.3d 265, 272 n. 13 (3d

31

Cir. 2010) (internal citation and quotation marks omitted).  The fact that employees

may have "more training or education than is required for their job" is not

important.  *Id.*  "[T]he determinative factor is the job requirement and not the

education in fact acquired by the employee."  *Dybach v. Fla. Dep't of Corr.*, 942

F.2d 1562, 1565 (11th Cir. 1991).

In *Kadden v. Visualex*, No. 11 Civ. 4892, 2012 WL 4354781 (S.D.N.Y. Sept.

24, 2012), after a bench trial, the court held that the fact that the employer hired the

plaintiff because of her law degree was not relevant because there was no evidence

that her job required her to use her law degree.  In concluding that the plaintiff was

non-exempt, Judge Scheindlin made clear that "the relevant inquiry under the

regulations is whether the employee's primary duty is the performance of work

*requiring* advanced knowledge," not whether the employer prefers or requires

certain credentials.  *Id.* at *9.  The district court should have applied the same

standard here.

### 2. Accounting Courses Were Not "Required" in Order for Plaintiffs to Do Their Jobs.

If the district court had analyzed Plaintiffs' actual job duties rather than

KPMG's hiring preferences, it would have easily found issues of material fact

sufficient to preclude summary judgment for KPMG.  Plaintiffs presented

substantial evidence that, even if Plaintiffs had "advanced knowledge," their Audit

Associate work did not "*require*" them to use it.  29 C.F.R. § 541.301(a)(1).  In

fact, there is substantial evidence that any accounting principles that Plaintiffs learned in college had little or nothing to do with their actual day-to-day audit tasks.  The district court should have credited Plaintiffs' evidence.

Plaintiffs testified unequivocally that they did not use *any* of the accounting principles they learned in school in performing their entry-level audit work.  For example, Plaintiff Pippins testified that in performing duties such as inventory counts, he just used his "common sense," and could not recall having to apply any of the accounting knowledge he acquired during college in his work at KPMG. (Pippins Tr. [JMS Ex. E] 80:3-12, JA__; Pippins Tr. [RMB Ex. LLL] 170:15-171:16, 173:19-174:15, JA__).

Likewise, Plaintiff Bradley testified that "the problem" with the Audit Associate job is that, despite having "all of this education," he did "not apply[] it to his duties at KPMG" as an Audit Associate because his "tasks did not require" it. (Bradley Tr. [JMS Ex. G] 111:20-112:3, 114:10-14, 164:5-23, 223:5-22, JA__).

Similarly, Plaintiff Schindler testified that she did not need to use any substantive knowledge of auditing and accounting to complete her assignments. (Schindler Tr. [JMS Ex. D] 214:19-215:2, JA__).  She also testified that she learned how to perform her tasks "on-the-job."  (Schindler Tr. [RMB Ex. KKK] 225:18-225, JA__).  This testimony is un-rebutted and the district court ignored it.

**B.      KPMG Did Not Prove Either Essential Element of the Definition of "Work Requiring Advanced Knowledge."**

KPMG failed to prove that Plaintiffs' work met the definition of "work requiring advanced knowledge."  Plaintiffs' work was not (1) "predominantly intellectual in character" and it did not require (2) "the consistent exercise of discretion and judgment."  Instead, it involved the "performance of routine mental, manual, mechanical or physical work."  29 C.F.R. § 541.301(b).

**1.      Plaintiffs' Primary Duty Was  Routine, Not "Predominantly Intellectual in Character."**

KPMG presented no evidence that the work that Plaintiffs performed was "intellectual in nature," rather than "routine."  Because even employees in the accounting industry "who normally perform a great deal of routine work generally will not qualify as exempt professionals," this failure should have been fatal to KPMG's motion.  29 C.F.R. § 541.301(e)(5).

Plaintiffs presented evidence that their most frequent work involved routine, mechanical exercises – counting and observing (Butler Tr. [JMS Ex. A] 404:17-405:17, 407:8-408:20, 408:21-409:2, 409:1-410:19, 410:24-411:13, 412:5-8, JA__; Walsh Tr. [JMS X. B]19:12-17, JA __), comparing and inputting numbers (Pippins Tr. [RMB Ex. LLL] 258:14-259:3, JA__; Lambert Tr. [RMB Ex. NNN] 146:7-147:3, 253:16-22, JA__; Bradley Tr. [RMB Ex. OOO] 61:22-62:7, JA__), and documenting (Lambert Tr. [RMB Ex. NNN] 132:12-24, 133:2-6, JA__).  These

34

types of tasks are not intellectual in nature.

In *Boddy v. Astec, Inc.*, No. 11 Civ. 123, 2012 WL 5507298 (E.D. Tenn. Nov. 13, 2012), the district court denied summary judgment on the question of whether the plaintiff, a "senior general accountant," was an exempt professional because there was "some evidence" that his duties were routine and not similar to work performed by a CPA. *Id.* at *2, *8-9. These "routine" duties included "simple data entry" such as typing numbers into a document, *id.*, similar to work performed by Plaintiffs in this case. *See also* U.S. Dep't of Labor Opinion Letter, 2007 WL 506578, at *1-3 (Feb. 1, 2007) (administering radiology chemicals, analyzing equipment, setting technical factors, and evaluating adequacy of film for readings, is non-exempt "routine mental, manual, mechanical and physical" work).

The district court made no finding on this requirement. Instead, it simply relied on the fact that Plaintiffs' duties "involve performing tasks *that are associated with performing audits*." (SJ Order, p. 33, SPA__ (emphasis added)). This analysis is too superficial and ignores the governing regulation, which is clear that simply working in the accounting industry is not sufficient. 29 C.F.R. § 541.301(e)(5).

### a. Whether Audit Associates' Primary Duty Is Routine Work Was a Question for a Jury.

The District Court acknowledged that Plaintiffs "are required to perform some fairly mundane tasks." (SJ Order, p. 33, SPA__). Plaintiffs present evidence,

however, that almost all (not "some") of Associates' work is "routine."  29 C.F.R. §
541.301(b).  Whether their primary duty consisted of "mundane" or "routine" work
should have been determined by a jury.

The tasks Plaintiffs most frequently performed, such as rolling forward work
papers simply by updating previous years' papers with the current year's
information (Schindler Tr. [RMB Ex. KKK] 187:25-189:11, JA__; Lambert Tr.
[RMB Ex. NNN] 148:15-149:4, JA__; Bradley Tr. [RMB Ex. OOO] 49:14-50:8,
58:24-59:9, 81:12-25, JA__); comparing or matching numbers on client invoices
and financial statements (Pippins Tr. [RMB Ex. LLL] 258:14-259:3, JA__); and
performing walkthroughs in which they transcribe the internal control steps that are
conducted by the client's personnel (Lambert Tr. [RMB Ex. NNN] 132:12-24,
133:2-6, JA__), are not exempt work.

Many of Plaintiffs' most frequent tasks were as simple as inputting numbers
into a document or updating a spreadsheet.  (Lambert Tr. [RMB Ex. NNN] 146:7-
147:3, JA__) ("risk of failure" work involved inputting numbers into spreadsheet);
(*Id.* 253:16-22, JA__) (balance sheet work involved inputting numbers into
spreadsheets);  (Bradley Tr. [RMB Ex. OOO] 61:22-62:7, JA__) (updating work
papers involved inputting numbers into a prepared worksheet).  Other common
tasks, such as comparing numbers, taking detailed notes, and entering information
into templates was equally routine.  (Butler Tr. [JMS Ex. A] 407:8-408:20, 409:21-

36

410:19, 698:11-700:20, JA__; Pippins Tr. [JMS Ex. E] 172:14-173:3, 258:14-

259:3, JA__; Lambert Tr. [JMS Ex. F] 198:3-12; Bradley Tr. [JMS Ex. G] 98:11-

18, JA__; Young Tr. [JMS Ex. H] 229:25-230:4, 258:3-5,JA__; Audit Workbook:

Engagement Management [JMS Ex. Q], JA__; Schindler Tr. [RMB Ex. KKK]

169:20-170:7, 172:14-25, 181:9-183:2, JA__; Pippins Tr. [RMB Ex. LLL] 258:14-

259:3, JA__; Lambert Tr. [RMB Ex. NNN] 210:19-24, 211:6-12, 212:24-213:5,

JA__).

KPMG's own documents and testimony suggest that Plaintiffs' jobs required

"no more than the use of skill in applying well-established techniques, procedures

or specific standards described in manuals or other sources." *See* 29 C.F.R. §

541.202(e). Most of their tasks were laid out in audit steps identifying the

procedures to be completed. (KPMG Professional Judgment Framework [JMS Ex.

N], JA __; Butler Tr. [JMS Ex. A] 268:5-17, 512:10-513:22, JA __).

In performing their assigned procedures, Plaintiffs followed templates,

checklists, and software. (Butler Tr. [JMS Ex. A] 618:17-20, 619:25-620:20, JA__;

Walsh Tr. [JMS Ex. B] 41:13-24, 42:7-9, 43:5-7, JA__); Communications [Ex. II],

JA__; Template Working Paper [Ex. MM], JA__; Pippins Tr. [RMB Ex. LLL]

112:8-19, 171:23-173:3, JA__; Bradley Tr. [RMB Ex. OOO] 31:21-32:5, 218:11-

219:4, JA__). They followed standard procedures established by KPMG, from

which they rarely—if ever—deviated. (Pippins Tr. [JMS Ex. E] 112:8-19, JA__;

Pippins Tr. [RMB Ex. LLL] 39:15-18, 112:8-19).

Even the complicated-sounding audit tasks, such as "testing operating

effectiveness," and "performing substantive procedures," simply involved the use

of guides and templates. (Pippins Tr. [RMB Ex. LLL] 39:15-18, 112:8-19, JA__;

Bradley Tr. [JMS Ex. OOO] 31:21-32:5). "Expense analytics" meant comparing

previous data to current data and providing that information to more senior team

members. (Lambert Tr. [RMB Ex. NNN] 212:24-213:5, JA__). "Testing internal

controls" involved obtaining a list of the client's controls and redoing the steps.

(Schindler Tr. [RMB Ex. KKK] 169:20-170:7, JA__). "Conducting an inventory

observation" generally involved physically counting inventory and comparing the

count with the client's records. (Butler Tr. [JMS Ex. A] 404:17-405:17, 407:8-

408:20, 408:21-409:2, 409:1-410:19, 410:24-411:13, 412:5-8, JA__; Walsh Tr.

[JMS Ex. B]19:12-17, JA__).

The district court found that Plaintiffs' work was exempt because it was

"vital to the [audit] process" and because Audit Associates are required to perform

their work "in accordance with professional standards." (SJ Order, pp. 23, 47;

SPA__) (emphasis added). It went so far as to say that even if Plaintiffs' duties

involved simply "*comparing numbers or inputting numbers into a spreadsheet*" (SJ

Order, p.47, SPA__), they would still be exempt professionals.

This conclusion is incorrect because no matter how "vital" Plaintiffs' work, it is non-exempt if it is "routine mental . . . work."  *See* 29 C.F.R. § 541.301(b). Important work is not necessarily exempt work.  *See Reich v. Am. Int'l Adjustment Co., Inc.*, 902 F. Supp. 321, 326 (D. Conn. 1994) (granting summary judgment for plaintiffs on liability, finding that although plaintiffs-appraisers' work was "important" to employer's ability to do business, they were not exempt).

### 2. Plaintiffs Did Not Consistently Exercise Discretion and Judgment.

The district court set the bar for the "consistent exercise of discretion and judgment," 29 C.F.R. § 541.301(b), far too low.  Under the district court's standard, almost any work in any field would be sufficient to meet the exemption criteria. Plaintiffs presented substantial evidence that they did not consistently exercise discretion and judgment.

### a. The District Court Was Wrong to Ignore the Administrative Exemption in Defining "Discretion and Judgment."

Because the phrase "discretion and judgment" is not specifically defined in the professional exemption regulations, courts interpreting the professional exemption look to the administrative exemption's definition of "discretion and independent judgment," even though the surrounding language is different.[3]  *See*

---

[3]      *Compare* 29 C.F.R. § 541.200(a)(3) (administrative exemption applies to employees "[w]hose primary duty includes the exercise of discretion and

*De Jesus-Rentas v. Baxter Pharmacy Servs. Corp*., 400 F.3d 72, 74 n.4 (1st Cir. 2005).[4] The administrative exemption defines the "exercise of discretion and independent judgment" as generally involving "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," 29 C.F.R. § 541.202(a). Discretion and independent judgment "must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources," 29 C.F.R. 541.202(e), and "does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." *Id.*

**b. The District Court Set the Bar Far Too Low.**

Instead of using the well-accepted definition of discretion and judgment, the district court fashioned its own standard based almost solely on its observation that

---

independent judgment with respect to matters of significance") *with* 29 C.F.R. 541.301(a), (b) (professional exemption applies to employees whose primary duty is work requiring advanced knowledge, which "means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment").

4 The district court cited *De Jesus-Rentas* and *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527 (7th Cir. 1999), in support of its conclusion that the professional "discretion and judgment" standard is far less stringent than the administrative "discretion and independent judgment" standard. (SJ Order, pp. 34-35, SPA__). In both cases, however, the courts looked to the administrative exemption standard in interpreting the professional exemption and acknowledged their similarity, as Plaintiffs urge here. *De Jesus-Rentas*, 400 F.3d at 74-75 & n.4; *Piscione*, 171 F.3d at 534.

"consistent exercise of discretion and judgment" under the professional exemption is "less stringent" than "independent discretion and judgment with respect to matters of significance" under the administrative exemption.[5]  (SJ Order, pp. 35-36, SPA__).

Disregarding well-reasoned authority to the contrary, the district court set the bar so low that it found "simply deciding whether an issue warrants the attention of a more senior member of the team indicates an exercise of discretion and judgment."  (*Id.*, p. 46, SPA__).  This is contrary to the principle that FLSA exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to [employees] plainly and unmistakably within their terms and spirit."  *In re Novartis Wage and Hour Litig.*, 611 F.3d at 150.

### 3.    Audit Associates Did Not Exercise Consistent Discretion and Judgment.

Plaintiffs presented evidence that they rarely, much less "consistent[ly]," exercised discretion or judgment as part of their primary duty.   29 C.F.R. § 541.301(b); *see supra* Statement of Facts § V-VII.  A reasonable jury, therefore,

---

[5]    The district court cited the preamble to the 2004 FLSA regulations for this principle.  *See* SJ Order, p. 35, SPA__ (citing *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, the Preamble to the 2004 Final Rule,* 69 Fed. Reg. 22151 (Apr. 23, 2004) (to be codified at 29 C.F.R. pt. 541) ("*Defining and Delimiting the Exemptions*").  The preamble, however, "is not controlling over the language of the regulation itself."  *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999).

could conclude that Plaintiffs' jobs involved "routine mental . . . . work," 29 C.F.R. § 541.301(b), that they applied well-established procedures to perform their audit tasks, and that their work did not involve "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," as required by the FLSA. 29 C.F.R. § 541.202(a). The district court should have credited Plaintiffs' evidence and allowed a jury to make these factual findings.

Instead, the district court discounted Plaintiffs' testimony describing their work as routine and not requiring prior accounting knowledge, stating that it was "argument" (SJ Order, p. 17, SPA__). This was a credibility determination that the district court should not have made. *See Anderson*, 477 U.S. at 249, 255.

### a. Whether Plaintiffs' Primary Duty Required Consistent Discretion and Judgment Is A Question For the Jury.

The district court should have denied summary judgment on the discretion and judgment requirement solely based solely on the evidence it highlighted in its order. The district court acknowledged evidence that the audit procedures Plaintiffs performed were set forth in pre-determined steps, that KPMG's proprietary "eAudit" software program walked Audit Associates through each audit step, and that Plaintiffs' duties involved counting inventory, comparing numbers, inputting numbers into excel sheets, taking notes, drafting work papers using

42

templates, and performing clerical and administrative tasks. (SJ Order, pp. 9, 11, 13, 7-19, SPA__). *See* Statement of Facts § V, *supra*.

In addition to the evidence that the district court acknowledged, the record is replete with other evidence that Plaintiffs did not consistently exercise discretion and judgment. Plaintiffs' primary duty did not include designing or determining procedures, deciding what methods to use, making decisions relating to tests, or determining materiality. *See* Statement of Facts § VI, *supra*.

Plaintiffs also presented evidence that they did not compare and evaluate possible courses of conduct and act or make a decision after considering the various possibilities. *See* 29 C.F.R. § 541.202(a). For example, KPMG's own documents show that Audit Associates were heavily encouraged to consult with more senior team members (Audit Quality [JMS Ex. GG], JA__), and Plaintiffs testified that they were instructed to raise any concerns or issues with more senior team members, and not to fix anything on their own. (Lambert Tr. [JMS Ex. F] 116:19-117:2, 122:2-13, JA__; Bradley Tr. [Ex. G] 72:9-14, 72:18-73:5, JA__; Lambert Tr. [RMB Ex. NNN] 105:10-106:6, JA__; Bradley Tr. [JMS Ex. OOO] 241:17-242:3, JA__). Plaintiffs were instructed just to collect and report information and communicate it to others to make the decisions. (Lambert Tr. [RMB Ex. NNN] 122:2-13, 194:25-195:10). Plaintiffs passed information they obtained to senior team members who drew conclusions from them. (Lambert Tr.

43

[RMB Ex. NNN] 122:2-13, 194:25-195:10, JA___).  Plaintiffs wrote down each step they performed for senior team members.  (Schindler Tr. [RMB Ex. KKK] 210:19-211:13).  This kind of routine fact-gathering work raises an issue of fact sufficient to defeat summary judgment.  *See Foster v. Nationwide Mut. Ins. Co.*, 695 F. Supp. 2d 748, 760-61 (S.D. Ohio 2010) (issue of fact as to whether insurance investigators are fact-gatherers or "insurance fraud experts").

In *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 677 F. Supp. 2d 544 (D. Conn. 2009), a case with similar facts to this one, the court denied summary judgment to the employer, holding that it was "unclear" whether "investigat[ing] discrepancies" in financial documents "constitute[d] 'discretion and judgment' within the meaning of the professional exemption." 677 F. Supp.2d at 553 (internal citations omitted).  The court relied on some of the same evidence Plaintiffs present here, including evidence that "a significant portion of [the plaintiff's] job involved data entry, rather than work requiring accounting knowledge;" that the plaintiff "was 'micro manage[d]' by his supervisors;" and that he "followed day-to-day 'checklists' and had no authority to change such checklists."  *Id.* at 553.

The district court rejected the reasoning in *Hendricks* even though Plaintiffs' lack of consistent discretion and judgment is even more clear-cut than in that case.  Plaintiffs did not work independently (Lambert Tr. [JMS Ex. F] 116:19-117:2, 122:2-13, JA___; Bradley Tr. [Ex. G] 72:9-14, 72:18-73:5, JA___; Lambert Tr. [JMS

44

RMB Ex. NNN] 105:10-106:6, JA__; Bradley Tr. [JMS Ex. OOO] 241:17-242:3,

JA__), and did not apply accounting principles (Schindler Tr. [JMS Ex. D] 214:19-

23; Pippins Tr. [JMS Ex. E] 80:3-12, JA__; Bradley Tr. [JMS Ex. G] 111:20-112:3,

114:10-14, 164:5-23, 223:5-22, JA__).

Plaintiffs' work was also comparable to the work of the staff accountants in

*Brock v. National Health Corp.*, 667 F. Supp. 557 (M.D. Tenn. 1987), which the

court held did not involve discretion and judgment. *Id.* at 567. The staff

accountants' primary duty was auditing nursing home books prepared by

bookkeepers. *Id.* at 561. Like Plaintiffs, they were closely supervised and

followed detailed procedures. *Id.* at 560-61. They were also required to bring

errors they identified to their supervisors' attention. *Id.* at 560, 566. The court

properly rejected the argument that the responsibility to identify errors was "a

discretionary matter," and held that "[t]he fact that mistakes might appear in . . .

ledgers or that there might be apparent mistakes about which the staff accountant

should make inquiry, is not a discretionary matter" because "[a]ny ordinary

bookkeeper would make inquiries about abnormalities" that he or she found. *Id.* at

567 (internal citations omitted).

### b. The Professional Standards Governing the Audit Industry and General Statements Regarding Job Duties Do Not Dictate That Plaintiffs' Primary Duty Required the Consistent Exercise of Discretion and Judgment.

Rather than crediting Plaintiffs' evidence and drawing inferences in their favor, the district court adopted KPMG's conclusory assertion that "professional standards" governing the audit industry dictated a finding that Plaintiffs consistently exercised discretion and judgment. (SJ Order, p.22, SPA__). In concluding that Plaintiffs were exempt professionals, the district court found it "most important" that Audit Associates are expected to exhibit "professional skepticism" and "be on the constant lookout for indications of fraud or misstatements." (*Id.*, p. 39) These vague descriptions are insufficient to support summary judgment.

The "professional standards" are a red herring. A reasonable factfinder could conclude that "due professional care," "professional skepticism," and "professional judgment," to the extent they are exercised by Audit Associates at KPMG, are not what the federal regulations mean by "discretion and judgment." Plaintiffs presented evidence that in following professional standards, Audit Associates did not engage in "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).

46

Even KPMG describes these concepts very differently than the FLSA defines discretion and judgment. KPMG defined "professional skepticism" as "a state of mind" – thinking objectively and critically. (Counter-Statement, ¶ 59(a), JA__). KPMG's witnesses and corporate documents also described it as having a "questioning mind" and not blindly trusting that information is correct without verifying it. (Butler Tr. [JMS Ex. A] 519:8-14, 521:14-17, JA__; Walsh Tr. [JMS Ex. B] 109:13-110:2, JA__; Professional Judgment [JMS Ex. N], JA__).

According to KPMG's own witness, when an Audit Associate comes across something inconsistent with a set of pre-determined expectations, the Audit Associate exercises "professional skepticism" by noting the inconsistency and notifying others. (Butler Tr. [JMS Ex. A] 522:12-523:5, JA__; Lambert Tr. [RMB Ex. NNN] 105:10-106:6, 106:20-107:6, 116:19-117:2, 122:2-13, JA__; Bradley Tr. [RMB Ex. OOO] 72:9-14; 72:18-73:5, 241:17-242:3, JA__). None of this amounts to discretion and judgment under the FLSA. 29 C.F.R. § 541.202(b), (c). Under the FLSA, discretion and judgment is much more than the "simple application of 'common sense' as to the propriety of a certain action." *Cotten v. HFS-USA, Inc.*, 620 F. Supp. 2d 1342, 1353 (M.D. Fla. 2009).

A reasonable jury could find that "care," "skepticism," and "judgment" do not play a significant role in Plaintiffs' day-to-day tasks. (Pippins Tr. [RMB Ex. LLL] 170:15-171:16, 173:19-174:15, JA__ (used common sense, not professional

47

judgment, on inventory observations);  Young Tr. [RMB Ex. MMM] 137:10-15,

JA__ (understood exercising professional skepticism to mean not doing something

"mindlessly" and asking questions), 85:18-25, JA__ (acting in a "conservative and

ethical" manner);  Lambert Tr. [RMB Ex. NNN] 31:17-21, 106:20-107:6, 116:5-11,

JA__ ("taking care" in performing work, bringing any errors to the attention of

senior team members, and "being professional in [his] communication")).

     The district court applied a much lower standard than the FLSA requires.

According to the district court, Plaintiffs exercised consistent discretion and

judgment by performing very simple tasks that would be expected of any worker in

any industry, including "following up" on discrepancies, knowing when to ask

questions, and summarizing information.  (SJ Order, pp. 39, 46-47, SPA__).  The

district court incorrectly held that vague descriptions of Audit Associate activities

such as modifying questions "if necessary" when speaking with client

representatives during walk-throughs, "follow[ing] up on any inconsistencies to

client responses," "summariz[ing] (not parrot[ing] back) client responses,"

"following up on any discrepancies they notice" during inventory observation and

notifying others of those discrepancies, "elevat[ing] the issue to the in-charge if

they deem it necessary," generally exhibiting "professional skepticism throughout

all aspects of their audit work," "simply deciding whether an issue warrants the

attention of a more senior member of the team," and being on the "lookout for

indications of fraud or misstatements" required the use of discretion and judgment. (*Id.*)

KPMG's invocation of the professional standards and its general statements that Audit Associates "investigate and analyze relationships," "identify key factors," and must be on the "lookout" for fraud and misstatements (SJ Order, pp. 14, 37, 39, SPA__), are insufficient to establish that Plaintiffs' primary duty requires the exercise of consistent discretion and judgment under the FLSA, especially given the principle of narrow construction. *See In re Novartis Wage and Hour Litig.*, 611 F.3d at 150.

### c.   The District Court Made No Finding that Any Exercise of Discretion and Judgment by Plaintiffs Was "Consistent."

KPMG and the district court ignored the requirement that any discretion Plaintiffs exercised be "consistent." *See* 29 C.F.R. § 541.301(b). Although the regulations do not define the term "consistent," the dictionary defines "consistent" to mean: "marked by . . . regularity, or steady continuity."[6] Plaintiffs testified that in performing their day-to-day work they were instructed not to fix issues on their own and to consult with more senior team members if they had concerns, received assignments from more senior team members, and had their work reviewed by more senior team members. (Lambert Tr. [JMS Ex. F] 116:19-117:2, 122:2-13,

---

[6]   Merriam-Webster Online Dictionary, available at http://www.merriam-webster.com/dictionary/consistent (last visited June 25, 2013).

JA__; Bradley Tr. [Ex. G] 72:9-14, 72:18-73:5, JA__; Lambert Tr. [RMB Ex.

NNN] 105:10-106:06, JA__; Bradley Tr. [JMS Ex. OOO] 241:17-242:3, JA__).

KPMG's own documents confirmed this.  (Goal Statements: Audit Associate [JMS

Ex. S], JA__; Audit Quality [JMS Ex. GG], JA__).  Even if some Plaintiffs

occasionally exercised discretion and judgment, KPMG failed to establish that it

was regular or continuous.

### C.   Plaintiffs' Primary Duty Did Not Require Knowledge Acquired by a "Prolonged Course of Specialized Instruction."

Plaintiffs' primary duty also did not meet the third prong of the professional

exemption, that any advanced knowledge that the job required "must be

customarily acquired by a prolonged course of specialized intellectual instruction."

29 C.F.R. § 541.301(a)(3).

### 1.   KPMG Required Plaintiffs to Have Only a Limited (Not Prolonged) Accounting Background.

KPMG did not require all newly hired Audit Associates to have accounting

degrees or to be eligible to take the CPA exam.[7]  It is undisputed that Audit

Associates do not need a CPA license to perform their duties, and that KPMG does

not even require Audit Associates to have a degree in accounting.  (Def's. Resp. to

Pls.' Statement of Undisputed Material Facts, Dkt. No. 292, ¶ 341, JA__).  KPMG

only requires that Audit Associates have a bachelor's degree in some subject and

---

[7]     Although the vast majority of Audit Associates had accounting degrees and
were eligible to take the CPA exam, some were not.

be "near-CPA eligible" (Butler Tr. [JMS Ex. A] 458:5-8, 461:3-12, 296:20-24,

JA__).  These facts support a reasonable inference that, although an accounting

background or sufficient coursework to be eligible for the CPA exam might be

*helpful* to an entry-level Audit Associate, they were not *necessary* to allow them to

perform their work.

That KPMG was willing to hire even one Audit Associate who did not have

an accounting degree supports an inference that an accounting degree was not

required to do Audit Associate work.  In *Kadden*, the court held that a trial graphics

consultant with a legal degree was not an exempt professional employee, in part,

because one of the eight other graphics consultants was a paralegal with no

graduate degree or litigation graphics consulting experience.  2012 WL 4354781, at

*4, *10.  In addition, in *Kadden*, there was evidence that "any graduate degree

could qualify an employee for the position of graphics consultant."  *Id.*

### 2.  Plaintiffs Learned How to Perform Their Primary Duty Through KPMG's Training and on the Job.

Other evidence also supports a conclusion that Plaintiffs' jobs did not require

advanced accounting knowledge.  KPMG's training program taught new Audit

Associates how to perform the audit tasks that made up their primary duty.  *See*

*supra* Statement of Facts § IV.  The professional exemption does not apply to

employees who acquire the skills necessary to do their jobs through employer-

based training, rather than academic training.  *See* 29 C.F.R. § 541.301(c) (jobs that

"customarily may be performed with . . . knowledge acquired through an apprenticeship, or with training in the performance of routine mental . . . processes" are non-exempt).  Even job skills learned through intense, specialized in-house training are not covered by the professional exemption.  *See* U.S. Dep't of Labor Opinion Letter, 2000 WL 34444354, at *1-2 (July 14, 2000).

In *In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910 (D. Minn. 2010), the court denied a motion for summary judgment, finding an issue of fact as to whether a securities broker who held an M.B.A. was exempt because the plaintiff presented evidence that "much of the specialized knowledge that [he] use[d] in conducting his primary work duties [was] customarily acquired through on-the-job training and experience."  *Id.* at 924-25.

Likewise, here, Audit Associates learn most of what they need to know after KPMG hires them.  Plaintiffs learned how to apply audit procedures at KPMG, not through prior prolonged, intellectual academic instruction.  *See* 29 C.F.R § 541.301(1)(3).  The training KPMG provided taught them the purpose of their tasks, how to perform them, and how to document them.  (Butler Tr. [JMS Ex. A] 473:14-22, JA__).  Audit Fundamentals teaches new Audit Associates KPMG's audit methodology and the procedures they are likely to perform.  (*Id.* 122:16-22, JA__; Walsh Tr. [JMS Ex. B]13:1-5, 19:12-22,  20:18-21, 66:9-11, 70:25-71:4, 78:9-16, 81:13-16, 84:12-17, 93:16-22, 324:6-10, JA __).

What KPMG's training did not teach them, Plaintiffs learned on the job by watching their co-workers.  Like employer-based training, knowledge gained from on-the-job training does not qualify as "advanced knowledge" under the professional exemption.  29 C.F.R. § 541.301(d); *In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d at 925.  Most of Audit Associates' tasks were set out for them in steps and summarized in an audit program.   (KPMG Professional Judgment Framework [JMS Ex. N], JA__; Butler Tr. [JMS Ex. A] 268:5-17, JA__; 512:10-513:22; JA __).  The eAudit program also took them through audit steps and provided them with advice on how to apply KPMG methodology to those steps.  (Butler Tr. [JMS Ex. A] 618:17-20, 619:25-620:20, JA__; Walsh Tr. [JMS Ex. B] 41:13-24, 42:7-9, 43:5-7, JA__).

Senior Associates routinely provided on-the-job training to Audit Associates, helping them to understand tasks they are performing and walking them through those tasks.  (Butler Tr. [JMS Ex. A] 398:19-22, 472:4-19, 743:11-744:11; 747:23-748:22, 751:8-23; 755: 12-18; JA__).  Plaintiff Schindler testified that she learned how to perform the tasks the "senior told [her] to do" "on-the-job."  (Schindler Tr. [Ex. KKK] 225:18-225, JA__).

Although KPMG disputed that its training program and on-the-job training were all that entry-level Audit Associates needed to perform their primary duties, Plaintiffs' evidence was sufficient to prevent summary judgment for KPMG.  A

53

reasonable jury could credit Plaintiffs' evidence and find that a prior accounting

education was not necessary to perform the Audit Associate primary duties because

Plaintiffs learned how to do audit work at KPMG, not in school.  *See Anderson*,

477 U.S. at 249, 255 (a court considering a motion for summary judgment cannot

weigh the evidence or make credibility determinations, as those are jury functions).

## I.    Summary Judgment Was Premature Because Plaintiffs Had Not Completed Discovery.

The district court granted KPMG's motion for summary judgment

prematurely.  The parties completed only one of the two discovery phases that the

district court had ordered, and Plaintiffs had not yet gained access to information

important to their ability to prove their case.

In response to KPMG's summary judgment motion, Plaintiffs filed a timely

and well-supported motion for additional time to take discovery under Fed. R. Civ.

P. 56(d) ("Rule 56(d) Motion").  The district court denied it with a two-line

handwritten order almost two months *before* deciding KPMG's summary judgment

motion:  "Denied, without prejudice.  There will be plenty of opportunity for

discovery if the summary judgment motions are inconclusive."  (56(d) Order [Dkt.

No. 345], SPA__).

This ruling is contrary to the purpose of Rule 56(d).  The reason litigants ask

for the right to complete discovery is *in order to oppose summary judgment*.

Therefore, if this Court determines that Plaintiff has not yet presented sufficient evidence to "generate[] uncertainty," *Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir. 1989), as to any fact material to "any essential element" of KPMG's affirmative defense, *Lazoda v. Maggy*, 900 F. Supp. 596, 601 (N.D.N.Y. 1995) (citing *Celotex Corp.*, 477 U.S. at 322), the Court should vacate the summary judgment order and remand to allow Plaintiffs to complete discovery and oppose summary judgment on a full record. A district court's denial of additional time to conduct discovery pursuant to Fed. R. Civ. P. 56(d) is reviewed for an abuse of discretion. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994).

### A.    Plaintiffs Had Not Completed Discovery When KPMG Moved For Summary Judgment.

After the district court granted Plaintiffs' motion for FLSA collective action notice, it put in place a unique, phased case management plan. According to the district court, the first stage of discovery would take place "on an expedited basis, with an eye to having someone (probably Plaintiffs), move for summary judgment[.]" (216(b) Order [Dkt. No. 129], p. 27, JA__).[8]

---

[8]    The district court was correct in recognizing that the party moving for summary judgment would "probably" be Plaintiffs because in order to prevail, Plaintiffs needed only to demonstrate that KPMG had failed to meet its burden on a single element of its professional exemption affirmative defense. KPMG, which bore the burden of proof, *see Martin v. Malcolm Pirnie, Inc.*, 949 F.2d at 614,

The district court allowed discovery only on "the issue of why all Audit Associates are classified as exempt, without regard to their personal situations." (*Id.*, JA__).  The district court allowed Plaintiffs to depose only the three upper-level corporate witnesses that KPMG intended to call at trial.  (Mar. 2, 2012 Conf. Tr., 25:16-17, JA__).  Plaintiffs were not allowed to depose other KPMG employees whom Plaintiffs might have called in their case during the first discovery phase.

In addition, Plaintiffs only had access to KPMG's hand-selected corporate-level emails and corporate documents, and were precluded from almost all "on-the-ground" discovery from class members and their direct supervisors.  (*Id.* 25:16-17, 27:1-13, JA__).[9]  The district court said that it wanted to address "the big issue first and see if we can get rid of the case" before having "a whole big boatload of discovery."  (*Id.* 27:1-13, JA__).  The rest of discovery, including depositions of other KPMG corporate employees and representative discovery related to front-line KPMG personnel, including Audit Associates and their supervisors, was

---

needed to prove "each element of the claimed exemption."  *Martin v. Ind.Mich. Power Co.*, 381 F.3d at 578.

[9]     The only audit associate-level discovery in the case was the depositions of five plaintiffs who submitted declarations supporting Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice, months before the merits discovery period opened.  Plaintiffs were not even allowed to obtain their own personnel files prior to the depositions.  (May 2, 2011 Conf. Tr. [Dkt. No. 62], 26:18-28:6, JA__).

deferred until after a round of summary judgment briefing. (Stipulation [Dkt. No. 226] pp. 1-2, JA__). The district court repeatedly deferred Plaintiffs' requests for broader discovery, reasoning that there would be time for the discovery Plaintiffs sought during the second phase.

Before the district court denied Plaintiffs' Rule 56(d) Motion and granted KPMG's summary judgment motion, nobody suggested that discovery was over. Critically, in deferring Plaintiffs' motion to compel several categories of discovery, the magistrate judge commented that this "very compressed proceeding" was meant to put before the Court "a very discrete issue that will either potentially resolve things or open things up even more." (May 3, 2012 Conf. Tr. [Dkt. No. 231] 52:6-10, JA__). The magistrate judge made clear that his rulings against Plaintiffs were "without prejudice to the plaintiff making a further application for this information in the full-blown discovery period, should there be a full-blown discovery period." (*Id*. 39:16-20; 55:22-56:4, JA__).

The magistrate judge also specifically noted that "if there's discovery [Plaintiffs] don't have that prevents [them] from making certain arguments[,] I'm sure [they]'ll raise that as part of [their] motion practice before Judge McMahon, right?" (*Id.* 28:10-14, JA__).

This was consistent with the district court's own explanation that it created phased discovery to avoid "the whole entirety of discovery on every issue that

could conceivably be raised in this case," but that further discovery might be necessary to resolve the exemption question.   (Mar. 2, 2012 Conf. Tr. 27:8-13, JA__).  It was also consistent with its presumption that Plaintiffs would be the moving party.  (216(b) Order, p. 27, JA__).

Sharing the understanding that the first phase of discovery was not the entirety of discovery, the parties entered into a stipulation consistent with the district court's directions.  The stipulation, which the district court so ordered, specifically refers to a second stage of discovery and identifies numerous categories of discovery, including Plaintiffs' work emails, that it deferred until the second stage.  (Stipulation, pp. 1-2, JA__).

Finally, during discovery and even after summary judgment briefing, the parties engaged in a satellite litigation regarding KPMG's preservation obligations with respect to Audit Associates' computer hard drives.  Although the district court ordered KPMG to preserve these hard drives because they would be relevant in a later discovery period, *see Pippins v. KPMG LLP*, 279 F.R.D. 245, 255 (S.D.N.Y. 2012), the district court's summary judgment order prevented Plaintiffs from the opportunity to obtain them and use them.

Critically, the district court only deferred discovery that Plaintiffs requested. Content that its exemption defenses would "stand or fall" on the general proposition that Audit Associates are hired with certain academic achievements

58

and subject to a uniform set of standards (May 3, 2012 Conf. Tr. 16:6-7, JA__),

KPMG did not seek any further discovery from Plaintiffs, *see* Def.'s Opp. to Pls.

Rule 56(d) Motion, Dkt. No. 310, at p. 3.  KPMG had the opportunity to portray

the Audit Associate job as it wished and was understandably satisfied with the

summary judgment record because it had almost completely controlled the scope

of its own disclosures.

>    **B.    Rule 56(d) Guarantees Litigants the Opportunity to Take Suffi-
>    cient Discovery to Oppose a Summary Judgment Motion,
>    Especially A Summary Judgment Motion Filed Before the End of
>    Discovery.**

The district court abused its discretion by denying Plaintiffs time to conduct

further discovery given the large volume of relevant discovery it deferred.  Under

Rule 56(d) (formerly Fed. R. Civ. P. 56(f)), a court should defer a ruling on a

motion for summary judgment where a party shows that it "cannot present facts

essential to justify its opposition."  Fed. R. Civ. P. 56(d).  "[W]hen a party facing

an adversary's motion for summary judgment reasonably advises the court that it

needs discovery to be able to present facts needed to defend the motion, the court

should defer decision of the motion until the party has had the opportunity to take

discovery and rebut the motion."  *Commercial Cleaning Servs., LLC v. Colin Serv.

Sys., Inc*., 271 F.3d 374, 386 (2d Cir. 2001).

Rule 56(d) is designed to prevent a nonmoving party from being "railroaded

into his offer of proof in opposition to summary judgment."  *Trebor Sportswear*

*Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting *Celotex*, 477 U.S. at 326) (internal quotation marks omitted).  A party against whom summary judgment is sought must be afforded "a reasonable opportunity to elicit information within the control of his adversaries."  *In re Dana Corp.*, 574 F.3d 129, 149 (2d Cir. 2009) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980)).

Rule 56(d) protects a party opposing summary judgment even where the party cross-moved for summary judgment.  Where parties file cross motions for summary judgment, "each party's motion must be examined on its own merits . . . ." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (internal quotation marks and citation omitted).  District courts in this circuit have routinely granted Rule 56(d) motions in such circumstances.  *See, e.g., Jones v. Hirschfeld*, No. 01 Civ. 7585, 2003 WL 21415323, at *7 (S.D.N.Y. June 19, 2003); *Boucher v. Sears*, No. 89 Civ. 1353, 1995 WL 283742, at *14 (N.D.N.Y. May 8, 1995).

The district court failed to consider these important principles in its cursory denial of Plaintiffs' Rule 56(d) Motion.

## C.  The District Court Deferred Discovery Important to Plaintiffs' Opposition to KPMG's Summary Judgment Motion.

Plaintiffs supported their Rule 56(d) Motion with a detailed affidavit explaining what discovery they sought but were not allowed.  (Swartz Decl. [Dkt.

60

No. 290], JA__).  The following is a summary of the information Plaintiffs sought and a brief explanation of why it is important:

Plaintiffs sought to obtain evidence of Plaintiffs' and class members' primary duties from documents and testimony about the class members themselves.  This would have painted a very different picture than KPMG's three hand-picked corporate witnesses painted.  Discovery samples and representative evidence are routinely used to prove class-wide liability issues in FLSA cases.  *See Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66-67 (2d Cir. 1997) (representative sampling from employees appropriate to establish prima facie case); *Morgan v. Family Dollar Stores*, *Inc.*, 551 F.3d 1233, 1244 (11th Cir. 2008) (noting that the district court allowed 250 depositions of opt-in plaintiffs out of approximately 2,500).

For example, Plaintiffs sought personnel files, performance reviews, and emails discussing work assignments and job duties.  (Swartz Decl. [Dkt. No. 290] ¶14, JA__).  These documents would help demonstrate Audit Associates' primary job duties, what tasks KPMG found to be most important, what tasks supervisors assigned, and how closely Audit Associates were supervised.

Plaintiffs also sought contact information for Audit Associates' supervisors. (*Id.* ¶13, JA__).  This information would have allowed Plaintiffs to obtain statements from supervisors about their primary duties.  As KPMG itself argued, "[t]he

best source of information regarding the job responsibilities of, and work actually performed by, the Named Plaintiffs and the putative class members is . . . their testimony, and the testimony of their supervisors."  (Mem. of Law in Supp. of Def.'s Mot. for a Protective Order, Dkt. No. 91, p. 12).

In addition to evidence from Audit Associates and their supervisors, Plaintiffs sought KPMG's internal communications regarding, among other things,  (1) Audit Associates' provision of services to KPMG clients; (2) emails regarding Audit Associates' compliance with or deviation from KPMG audit plans and audit methodology; (3) communications between Defendant and its clients describing the work that Audit Associates and other members of the audit team would perform; (4) emails discussing work assignments, work performance, job requirements, or job duties of Audit Associates; (5) any reports or complaints made by Audit Associates regarding the payment of overtime; (6) any studies and/or analyses regarding Audit Associates' work activities and time spent them; and (7) communications regarding KPMG's decision to stop paying overtime compensation to Audit Associates in 1996.   (Swartz Decl. [Dkt. No. 290] ¶15, JA__).  The magistrate judge ruled that searches for these communications should be deferred until the second stage of discovery.  (May 3, 2012 Conf. Tr. 25:13-28:19, JA__).

Plaintiffs also sought time records for a sample of Opt-ins, as well as KPMG's billing policies, practices and time charge requirements, to help deter-

mine what types of work Audit Associates perform, and for what portion of their days.  (Swartz Decl. [Dkt. No. 290] ¶16, JA__).  Time records coded by task would show the types of work Audit Associates actually perform and how much time they spend performing it.  (*Id.*).  This discovery was deferred until the second discovery stage.  (Stipulation, pp. 1-2; JA__).

Plaintiffs also sought a sampling of audit opinions, audit plans, and work papers related to client engagements.  (Swartz Decl. [Dkt. No. 290] ¶17, JA__).  As KPMG's own witness acknowledged, the "audit workpapers that the Associate[s] . . . prepared, reviewed, or contributed to" are a good source of information about their job duties.  (Apr. 27, 2012 Ltr. to Judge Cott, Ex. E [Dkt. No. 377-33], JA__).  This discovery was deferred until the second discovery stage.  (Stipulation pp. 1-2, JA__).

Plaintiffs were also denied the opportunity to depose additional KPMG witnesses about evidence KPMG produced at the very end of the first discovery phase of after it was over, including two detailed declarations and numerous important documents.  (Swartz Decl. [Dkt. No. 290] ¶¶20-24; JA__).  The district court was clear in its May 7, 2012 order that any requests for an extension of the first discovery phase would be futile.  (May 7, 2012 Order, Dkt. No. 228).

*       *       *

63

It was unfair for the district court to grant KPMG's motion for summary judgment based solely on KPMG's own version of the story.  Plaintiffs only had access to KPMG's three hand-picked trial witnesses.  They had not yet obtained whole categories of discovery, including representative discovery of field-level employees and their supervisors, that were deferred until later in the case.  When the Court denied Plaintiffs' motion for further discovery seven weeks before deciding KPMG's summary judgment motion, holding that "[t]here will be plenty of opportunity for discovery if the summary judgment motions are inconclusive," it ignored the fact that the discovery Plaintiffs sought was necessary for Plaintiffs to oppose KPMG's motion.  This denied Plaintiffs the opportunity to build their own case.

## I.    The Dismissal of the New York Labor Law Claims and the Denial of Class Certification Should Be Vacated.

When the district court granted summary judgment in KPMG's favor, it dismissed Plaintiffs' NYLL claim without prejudice.[10]  (SJ Order, p. 2, SPA__).  It also denied Plaintiffs' motion to certify a NYLL class under Fed. R. Civ. P. 23.  If

---

[10]     Although the district court's summary judgment order stated only that "[t]he state law claims are dismissed without prejudice," (SJ Order, p. 2, SPA__), the district court subsequently declined Plaintiffs' Motion to Alter or Amend the Judgment, which argued that the district court should exercise supplemental jurisdiction under 28 U.S.C. § 1367and/or diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  (Pls.' Mem. of Law in Supp. of Mot. to Alter or Amend, Dkt. No. 355, at p. 1; Order [Dkt. No. 363].

the Court reverses or vacates the district court's summary judgment order, it should also vacate the dismissal of the NYLL claims and vacate the denial of Fed. R. Civ. P. 23 ("Rule 23") class certification.  This would promote efficiency by allowing Plaintiffs to prosecute their almost identical FLSA claims and NYLL claims in one forum.

The district court properly had jurisdiction over the NYLL claims under 28 U.S.C. § 1367 because the FLSA claims and the NYLL claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 248 (2d Cir. 2011).

The Court should also vacate and remand the district court's denial of class certification because, if the district court retains jurisdiction of the NYLL claim, the motion to certify it is not moot.  *See, e.g., Kozera v. Westchester Fairfield Chapter of Nat'l Elec. Contractors Ass'n, Inc*., 909 F.2d 48, 55 (2d Cir.1990), *cert. denied*, 498 U.S. 1084 (1991).

## **<u>CONCLUSION</u>**

Plaintiffs-Appellants request that the Court reverse the judgment below and remand for further proceedings.

Dated: June 27, 2013                    Respectfully submitted,

By: /s/ Justin M. Swartz

Justin M. Swartz
Rachel Bien
Deirdre A. Aaron
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 13,925 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Dated: June 27, 2013                    Respectfully submitted,


                                        /s/ Justin M. Swartz

## CERTIFICATE OF SERVICE

I, hereby certify that on June 27, 2013, I electronically served the foregoing Plaintiffs-Appellants' Brief, via ECF upon the following:

Eamon P. Joyce, Esq.
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
ejoyce@sidley.com

Michael Kelley, Esq.
Jennifer A. Landau, Esq.
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(212) 896-6000
mkelley@sidley.com
jlandau@sidley.com

Carter G. Phillips, Esq.
Eric D. McArthur, Esq.
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
cphillips@sidley.com
emcarthur@sidley.com

**Attorneys for Defendant-Appellee KPMG LLP**

I certify that an electronic copy was uploaded to the Court's electronic filing system and six (6) hard copies of the foregoing Plaintiffs-Appellants' Brief was sent to the Clerk's Office By Hand Delivery to:

Clerk of Court
United States Court of Appeals, Second Circuit
United States Courthouse
500 Pearl Street, 3rd floor
New York, New York 10007
(212) 857-8576

/s/ Justin M. Swartz

68